COMMONWEALTH vs. WELLESLEY TOYOTA COMPANY, INC. & another.[1]

Suffolk. September 26, 1984. — November 2, 1984.

Present: BROWN, KASS, & SMITH, JJ.

*Motor Vehicle,* Dealer. *Injunction. Words,* "Customer," "Purchaser."

Under G. L. c. 93B, § 4 (4) (*a*), an automobile dealer is prohibited from requiring a buyer to accept an automobile with dealer-installed optional features the buyer does not want, regardless of whether the optional features were installed before or after the buyer signs the purchase order. [734-737]

CIVIL ACTION commenced in the Superior Court Department on April 27, 1983.

A motion for preliminary injunctive relief was heard by *Zobel,* J.

*Charles Corkin, II* (*Judith Ashton* with him) for the defendants.

*Diane L. Tsoulas,* Assistant Attorney General (*Dwight Golann & John Roddy,* Assistant Attorneys General, with her) for the Commonwealth.

KASS, J. On behalf of the Commonwealth, the Attorney General brought an action to restrain Wellesley Toyota Company, Inc. (Wellesley Toyota), from engaging in "option packing," i.e., selling a new car with accessories, trim, or treatment which the customer has not asked for, and, indeed, would like to do without.[2] A Superior Court judge issued a preliminary injunction against Wellesley Toyota from which the latter took

---

[1] John Poppell, who is president of Wellesley Toyota Company, Inc.

[2] For the authority of the Attorney General to act, see G. L. c. 93B, § 12, which invokes G. L. c. 93A, §§ 4 through 8.

an appeal in accordance with the second paragraph of G. L. c. 231, § 118.[3]

Wellesley Toyota cheerfully, yea proudly, acknowledges that it sells all cars, irrespective of customer request, with accessory service or components such as rustproofing, paint sealant, security locks, door edge guards, body pin stripes, and mud guards. None of the special features came with the cars as shipped by the manufacturer; they were added to the cars upon the order of Wellesley Toyota after the cars arrived in Boston.[4] By refusing to sell customers "stripped down" cars, Wellesley Toyota stoutly insists, it is doing them a favor because their cars, as thus improved, will last longer and have more value.

Whatever the merits of that view (one might suppose it to be the subject of lively difference of opinion), the significant fact, for purposes of this case, is that the Legislature has forbidden packing cars with undesired options.[5] Section 4(4)(a) of G. L. c. 93B, inserted by St. 1970, c. 814, § 1, makes it unlawful, because unfair and deceptive, "to require a purchaser of a new motor vehicle, as a condition of sale and delivery thereof, to also purchase special features, appliances, equipment, parts or accessories not desired or requested by the purchaser; . . ."

---

[3] The precise terms of the preliminary injunction are as follows: "[I]t is ORDERED that each Defendant be enjoined from failing to afford any prospective customer, buyer, or purchaser of any new motor vehicle the opportunity to decline to accept and pay for any special feature, appliance, equipment, part or accessory (unless the same shall have been already installed upon the said vehicle at the time Defendant obtains possession thereof)."

[4] Wellesley Toyota employed Foreign Auto Servicing, Inc., a company located at the Castle Island port facility, to install options on cars consigned to Wellesley Toyota.

[5] A linguistic paradox attends the phrase "undesired option," since an option, by definition, involves a choice and denial of choice is what the case is about. In the argot of the automobile business, the word "option" has come to mean additions to the standard equipment which the manufacturer provides. It is in this sense of "extra equipment" that we use "option" in this opinion.

Its sales policies, Wellesley Toyota argues, do not offend the statute because only its *customers* are obliged to accept cars with the dealer installed options; *purchasers,* which Wellesley Toyota defines as persons who have executed purchase and sale agreements, are not asked to accept anything more than was on the car when they signed on the dotted line. Upon analysis, the text of G. L. c. 93B, § 4(4)(*a*), provides little support for Wellesley Toyota's restricted interpretation of the word "purchaser." The statutory prohibition is against requiring acceptance of undesired options as "a condition of sale and delivery thereof." By distinguishing between sale and delivery, we may infer that the Legislature intended to prohibit imposition of the condition at the time the deal is struck, i.e., when the customer signs the purchase order. It is a canon of statutory construction that portions of language are not to be deemed superfluous. *Devaney* v. *Watertown,* 13 Mass. App. Ct. 927, 928 (1982).[6] Section 4(4)(*a*) provides that the prohibition "shall not apply as to special features, appliances, equipment, parts or accessories which are already installed on the car when received by the dealer." That clause emphasizes that dealer installed options are the target of the statute, without regard to whether they are installed before or after entry into a sales contract. As the motion judge observed in his memorandum and order, "The statute plainly seeks to afford the buyer of a motor vehicle the opportunity to purchase the vehicle in the same condition as that in which the manufacturer sent it to the dealer. Any other reading of the statute would in essence permit a dealer to garland a vehicle with options, place it on the lot, and tell any prospective buyer: 'Take it or leave it.' The dealer

---

[6] Under the Uniform Commercial Code, a sale, in the case of moveable goods, generally occurs when the goods are physically delivered. See G. L. c. 106, §§ 2-106(1), 2-401(2). The words "sale and delivery" are part of the same event and the phrase in the Code is a unitary one. Where, as with a car, it is necessary to deliver a document of title, the sale is completed at the time when and the place where the seller delivers the title documents. See G. L. c. 106, § 2-401(3); *Mechanics Natl. Bank* v. *Gaucher,* 7 Mass. App. Ct. 143, 147 (1979). There is no suggestion in the text of c. 93B that the special meaning assigned to certain words in the Code should be ascribed to those same words as they appear in c. 93B.

would thus deprive the consumer of the free choice which the statute guarantees." A statute should not be read in a manner which defeats its utility. *Simon* v. *Solomon,* 385 Mass. 91, 100 (1982).

Utilitarian considerations place the focus of § 4(4)(*a*) on pre-sales contract negotiations. Affidavits from customers of Wellesley Toyota, submitted on behalf of the Commonwealth, suggest that, at the time of the haggle which leads to the contract, customers are particularly vulnerable to persuasion that they have no reasonable alternative to accepting the dealer's option package. If a dealer were to add, and attempt to charge for, options after execution of a purchase contract which had not included them, the dealer would be in a breach of contract so conspicuous that even a suggestible and compliant customer would be unlikely to acquiesce in it. A further proviso of § 4(4)(*a*) calls upon the dealer "prior to the consummation of the purchase" to reveal to the purchaser the substance of the prohibition. Since earlier in the same paragraph the Legislature spoke of delivery, the sensible meaning which, in context, may be ascribed to "consummation of the purchase" is that the phrase refers to the execution of the purchase order. "[I]t is our duty to give the statute a reasonable construction." *Tedford* v. *Massachusetts Housing Fin. Agency,* 390 Mass. 688, 696 (1984).

Legislative history confirms our reading of the statute. Adoption of G. L. c. 93B was preceded by a Report of the Legislative Research Council Relative to Regulation of the Automotive Industry. See 1968 Senate Doc. No. 983. In that report the words customer and purchaser were used interchangeably. When introducing the subject of option packing, the report, at 16, speaks of "inducing or attempting to induce a retail *purchaser* to purchase equipment not desired" (emphasis added). In a later reference the report, at 26, says, "Thus forcing the *customer* to take unordered accessories would subject the dealer to board action" (emphasis added). In a still further reference, at 30, the report makes note that "several states have prohibitions against the dealer forcing or inducing the *customer* to take unordered accessories" (emphasis added).

We are unpersuaded by Wellesley Toyota's argument that we should engraft upon G. L. c. 93B, § 4(4)(*a*), a definition of the word "purchaser" appearing in 940 Code Mass. Regs. 5.01(10) (1980). That definition is: "*Purchaser* means any person who has obtained ownership of a motor vehicle by transfer or purchase or who has entered into an agreement or contract for the purchase of a motor vehicle." The regulations of which that definition is part were adopted under the authority of G. L. c. 93A, § 2(*c*). Although provisions of G. L. c. 93A and c. 93B overlap, the latter chapter "is a self-contained statute, prescribing specific remedies for its violation . . . ; in the case of conflict, the provisions of the specific statute must govern." *Reiter Oldsmobile, Inc.* v. *General Motors Corp.*, 378 Mass. 707, 711 (1979). Moreover, since 940 Code Mass. Regs. 5.01(10) did not become effective until October 11, 1976, it could hardly have been in the consciousness of the Legislature in 1970, when it inserted G. L. c. 93B. See St. 1970, c. 814, § 1.

As to Wellesley Toyota's argument that the occasion is not one for preliminary injunctive relief because there is no showing of irreparable harm, it is enough to cite to *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 86-87 (1984). That opinion holds that when the Attorney General acts in the public interest to enjoin violations of statutory provisions, demonstration of immediate irreparable harm is not a prerequisite. After *Purity Supreme, Inc.* v. *Attorney General*, 380 Mass. 762, 782-783 (1980), it is not necessary to respond to Wellesley Toyota's assertions that G. L. c. 93B, § 4(4)(*a*), is unconstitutional.

*Order affirmed.*