BEVERLY COONEY & others[1] *vs.* COMPASS GROUP
FOODSERVICE[2] & others.[3]

No. 05-P-1657.

Middlesex. December 14, 2006. - August 1, 2007.

Present: LENK, ARMSTRONG, & GRAHAM, JJ.

*Labor,* Wages. *Statute,* Construction. *Words,* "Service charge."

The plain language of G. L. c. 149, § 152A, the Massachusetts Tips Act, reflects
a legislative intent to regard any fee that an invoicing entity chooses to call a
"service charge" on an invoice for food or beverage service as being the
functional equivalent of a tip or gratuity, the proceeds of which must be
remitted to the service employees [636-640]; further, liability under the
statute falls only upon the entity that "submits a bill or invoice indicating a
service charge," which is not always the direct employer [640-641].

CIVIL ACTION commenced in the Superior Court Department on
July 30, 2002.

The case was heard by *Christopher J. Muse,* J., on motions
for summary judgment, and was reported to the Appeals Court
by *Peter M. Lauriat,* J.

*Shannon Liss-Riordan* for the plaintiffs.

*Judith A. Malone* for Northeastern University.

*John M. McKelway, Jr.,* for Compass Group Foodservice.

LENK, J. We are called upon in this case to interpret and apply
G. L. c. 149, § 152A, the Massachusetts Tips Act, as amended
in 1983, see St. 1983, c. 343, prior to its further amendment in

---

[1]Lauren Leeman, Robert Gerardi, Ann Lupone, Francisca Martins, Andrea
Biagi, Andrew Barman, Kathy Bertani, Celia Macedo, and Linda Gerardi. The
plaintiffs' motions for class certification were denied without prejudice.

[2]As is our custom, we use the name as it appears on the complaint. The
defendant indicates that the correct name is Compass Group USA, Inc., and that
it does business under the name of Chartwells.

[3]Northeastern University, Chartwells Foodservice (see note 2, *supra*), and
DAKA, Inc.

2004. The matters of first impression before us arise from invoices that Northeastern University (Northeastern) sent between 1994 and 2002 to customers of its Weston conference facility known as the Henderson House. Food and beverage service for certain functions held at the Henderson House, including wait staff and bartenders, was provided by Chartwells,[4] through a contractual arrangement it had with Northeastern.

When Northeastern invoiced those who had engaged Henderson House for such functions, it included on the invoices what it called a "service charge," calculated as a percentage of the food and beverage service provided. Viewing the "service charge" as a facilities fee not in the nature of a tip or gratuity, Northeastern used the proceeds for the upkeep of Henderson House and did not remit to the Chartwells service employees any portion of the "service charge" that it collected. That is the nub of the matter now before us: the plaintiffs, as Chartwells wait staff and bartenders for Henderson House functions, claim that Chartwells and Northeastern are jointly and severally liable under G. L. c. 149, § 152A, for not having remitted to the service employees proceeds of the service charges that were billed as such by Northeastern.

Section 152A, as in effect at all relevant times, provides as follows:

"No employer or other person shall solicit, demand, request or accept from any employee engaged in the serving of food or beverage any payment of any nature from tips or gratuities received by such employee during the course of his employment, or from wages earned by such employee or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee, as a condition of employment; and no contract or agreement between an employer or other person and an employee providing for either of such payments shall afford any basis for the granting of legal or equitable relief by any court against a party to such contract or agreement. *If an employer or other person submits a bill or invoice*

---

[4]Chartwells is an operating division of the Compass Group and specializes in food service for educational and other institutional clients. We refer to all defendants other than Northeastern collectively as "Chartwells."

*indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them.* Whoever violates any provision of this section shall be punished by a fine of not more than one thousand dollars and the court may require such employer or other person to make restitution for any tips or gratuities accepted or retained by him in violation of this section." (Emphasis supplied.)

Reduced to essentials, the plaintiffs claim that, under a straightforward reading of this statute, Northeastern, an "other person," "submit[ted]" to its Henderson House customers "invoice[s] indicating a service charge" and that the statute requires "the total proceeds of such charge . . . be remitted to [them] in proportion to the service provided by them."

Northeastern takes the position that its mere choice of words — "service charge" — cannot alone subject it to liability under the statute when, taking the facts in the light most favorable to Northeastern on the plaintiffs' motion for summary judgment, it did not intend to charge for anything in the nature of a gratuity, the Chartwells waitstaff and bartenders did not anticipate a gratuity, and those engaging Henderson House for functions who inquired about the service charge learned that it was not in the nature of a gratuity. Chartwells in turn rejects the notion that it has any liability under the statute for the reason, if no other, than that it submitted no invoices indicating such a service charge and had no involvement with or control over Northeastern's invoicing or disbursement practices.

We conclude that the term "service charge" as used in the statute includes the "service charge" that Northeastern invoiced its customers, and that Northeastern but not Chartwells has liability under the statute for retention of service charge proceeds.

*Background.* The plaintiffs brought their complaint in 2002, alleging violation of the Tips Act (count I), as well as a number of common-law claims. In August, 2003, all parties filed cross motions for summary judgment on count I, and Chartwells's motion was allowed. As to the remaining motions, the judge concluded that material issues of fact were in dispute concerning whether Henderson House customers reasonably believed that the "service charge" appearing on their invoices was a

gratuity; in his view, summary judgment was thereby precluded for both the plaintiffs and Northeastern as to invoices that specified a "service charge" in so many words. In June, 2004, Northeastern and the plaintiffs filed renewed motions for summary judgment. A second judge allowed Northeastern's motion in part, for the time period beginning in March, 2002, when Northeastern substituted the term "facilities charge" for "service charge."[5] The parties' motions were otherwise denied.

The second judge, at the parties' joint request, subsequently reported both decisions to us pursuant to Mass.R.Civ.P. 64(a), as amended, 423 Mass. 1403 (1996). Because it is apparent that this interlocutory matter "present[s] serious questions likely to be material in the ultimate decision," *Globe Newspaper Co.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.*, 412 Mass. 770, 772 (1992), quoting from *John Gilbert Jr. Co.* v. *C.M. Fauci Co.*, 309 Mass. 271, 273 (1941), and that our decision "if not completely dispositive of the matter, at least disposes of a central issue material to the ultimate decision," *id.* at 773, we review the substantive issues raised in the report.

*Facts.* The material facts for purposes of summary judgment on the limited grounds urged on appeal are not in dispute. As already noted, Northeastern had a contractual arrangement with Chartwells whereby the latter would provide food and beverage service for functions at Henderson House. Chartwells paid the wait staff and bartenders in its employ who provided these services on an hourly rate basis, using its higher "non-tipped" wage scale intended for those employees who did not receive substantial gratuities. Chartwells invoiced Northeastern for the food and beverage service provided at Henderson House functions, and Northeastern invoiced those who engaged Henderson House for functions that included food and beverage service.

Beginning in 1994, Northeastern included on its customer invoices an item which it denominated a "service charge," calculated as a percentage of the amount billed for food and beverage service. Initially, the rate was five percent, but it in-

---

[5]The plaintiffs have not appealed from this ruling, and we take no view as to the application of the act as amended in 1983 in the different situation where a charge that is plainly in the nature of a tip or gratuity is denominated in an invoice as something other than a "service charge."

creased over the years until in 2001 it was eighteen percent. Northeastern consistently intended to and did use the proceeds from the service charge for the upkeep of Henderson House; Northeastern never intended to nor did it remit the proceeds from the service charge to the Chartwells employees who provided food and beverage services at Henderson House. Northeastern did not intend what it denominated on its invoices as a "service charge" to be a charge in lieu of tip or gratuity, nor did it make other representations to that effect. Chartwells did not bill, collect, distribute, or retain any service charge relating to Henderson House functions, nor did it have any control over Northeastern's administration of such charges.

In March, 2002, Northeastern received notice from the Attorney General's office that a complaint had been filed alleging that Northeastern had failed to remit service charge proceeds to the wait staff and bartenders as required by G. L. c. 149, § 152A. Northeastern thereupon revised its customer invoices by omitting the term "service charge" and substituting the term "facilities surcharge." The Attorney General took no further action on the matter.

*The claim against Northeastern.* "We interpret a statute according to the intent of the Legislature. *Commonwealth* v. *Galvin,* 388 Mass. 326, 328 (1983). '[T]he primary source of insight into the intent of the Legislature is the language of the statute,' *International Fid. Ins. Co.* v. *Wilson,* 387 Mass. 841, 853 (1983), and that is our starting point. *Simon* v. *State Examiners of Electricians,* 395 Mass. 238, 242 (1985). Statutory language should be given effect consistent with its plain meaning. Where, as here, that language is clear and unambiguous, it is conclusive as to the intent of the Legislature. *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dept.,* 439 Mass. 352, 355-356 (2003)." *Commissioner of Correction* v. *Superior Ct. Dept. of the Trial Ct.,* 446 Mass. 123, 124 (2006).

Northeastern maintains that the meaning of the term "service charge" as used in § 152A is unclear and ambiguous, pointing both to the absence of any statutory definition of the term and to the Legislature's use of the same term, freighted with different meanings, in other unrelated statutes. The reading that Northeastern offers to remove the alleged ambiguity in the term "service

charge" would limit its application to only those instances where the invoiced charges, even if called "service charge[s]," are *in fact* charges in the nature of a tip or gratuity. Under such a reading, whether specific invoiced charges are in fact charges in the nature of a tip or gratuity would be ascertained on a case-by-case basis depending on the intent of the invoicing entity as to such charges.

We read the statute differently. Viewing the term "service charge" in the context of the Tips Act as a whole, and doing so "consonant with sound reason and common sense," *DiGiacomo* v. *Metropolitan Property & Cas. Ins. Co.*, 66 Mass. App. Ct. 343, 346 (2006), we discern neither a lack of clarity nor any ambiguity. From first to last, the statute makes plain that payments in the nature of tips or gratuities — certainly those paid or assessed in connection with food or beverage service — belong to the employees. The terms "tips" and "gratuities" are, moreover, words of ordinary meaning and are commonly understood. In context, so is the term "service charge." Whether a payment is made directly to the service employee or made indirectly to others on the employee's behalf — as would happen when a customer adds a tip to a credit card total or pays an invoice indicating a "service charge" — the statute requires that the proceeds be remitted to the service employees. The terms "tip," "gratuity," and "service charge," as used in § 152A, are synonymous.

By its plain language, § 152A requires that payments received on invoices submitted by "an employer or other person," insofar as they "indicat[e] a service charge," be paid over to the service employees. We take the statutory phrase "indicating a service charge" as meaning, in context, invoiced charges that are named, designated, denominated, labeled, or otherwise called a "service charge" on the invoice that is submitted. Cf. *Tiffany* v. *Sturbridge Camping Club, Inc.*, 32 Mass. App. Ct. 173, 180 n.10 (1992). Otherwise put, the statutory language reflects legislative intent to regard any fee that the invoicing entity chooses to call a "service charge" on an invoice for food or beverage service as being the functional equivalent of a tip or gratuity, thereby subjecting the fee to the statute. "The statute is unambiguous and must be construed as written." *Pyle* v. *School Comm. of S. Hadley*, 423

Mass. 283, 286 (1996). It applies to tips, gratuities, and fees that are called "service charges" in aid of a clear purpose: letting employees keep these payments. "This is not a case where following the statute's literal meaning would lead to a result contrary to legislative intent." *Shamban* v. *Masidlover*, 429 Mass. 50, 54 (1999).

The difficulty for Northeastern, of course, is that this plain-language construction can result in the imposition of liability on invoicing entities, such as itself, that may innocently have called a fee a "service charge" when a gratuity or tip was not at all what they had in mind. On this basis, Northeastern would have us eschew the literal construction, insisting that it cannot have been any part of the Legislature's purpose to set such a "trap for the unwary," one, moreover, that would result in a "windfall" for already fully-paid service employees. This purported trap can be avoided, Northeastern suggests, if we were to read into the statute a simple limitation, namely: only those invoiced fees called "service charges" that can be shown to have been intended as tips or gratuities by the invoicing entity may trigger liability under the statute.

The trouble with this suggestion is that it requires us to add words to the statute that the Legislature did not see fit to put there. This we may not do, particularly where we can make good sense of the statute without doing so. *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Ct. Dept.*, 439 Mass. at 355. Where "the language of the statute is clear, it is the function of the judiciary to apply it, not amend it." *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999). The Legislature no doubt could have written the statute in the way that Northeastern would prefer, putting the burden on service employees to prove in each instance that a particular "service charge" was in fact intended by the "employer or other person" as a tip or gratuity.[6] Doing so would surely have accorded greater protection to the innocent "employer or other person" and would have made recovery under the statute more onerous a task. But the Legislature did not strike the balance that way,

---

[6]Although the motion judges ruled that the intent of the customers was relevant, neither party concurs. Given our reading of the applicable statute, we agree that customer intent is not dispositive.

instead taking the uncomplicated approach of imposing liability whenever the invoicing entity, for whatever reason, chooses to call a fee a "service charge"[7] and then keeps the proceeds.

We do not, of course, read a statute literally when doing so would bring about an absurd result, see *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982), but that is not the situation here. Instead, it is the literal reading that reaches a result in conformity with evident legislative intent, even if it does so at the occasional expense of the invoicing entity that stumbles upon use of the wrong term. To be sure, from time to time service employees may reap seemingly unfair benefits from an invoicing entity's honest misstep, but such situations do not require that the statute be differently construed. In striking the balance as it did, in devising a type of "strict liability" to achieve its goal — letting employees keep tips, gratuities, and fees called "service charges" — the Legislature must be presumed to have factored into its calculus the risk of such results. "We cannot substitute our judgment for that of . . . the Legislature." *Church* v. *Boston*, 370 Mass. 598, 602 (1976). That being said, we do not in any event embrace Northeastern's characterization of itself as having been ensnared in a trap for the unwary. The version of the statute at issue had been in effect since 1983 and specifically addresses food and beverage service. Northeastern is a sizeable and sophisticated institution. As the second motion judge observed, "a fee called a 'service charge' assessed to a person renting a banquet hall where food and drinks are served, where such a charge is calculated as a percentage of that person's food and beverage purchases alone, bears a striking resemblance to a flat gratuity fee assessed to large groups at a typical restaurant. Couple this observation with the fact that for some significant amount of time this fee was in the general range of 12% to 18% of a party's food and beverage purchases, and the similarity becomes even more apparent."

Lastly, although Northeastern endeavors to support its suggested reading of G. L. c. 149, § 152A, by reference to the

---

[7]Indeed, the use of this undefined term "service charge" buttresses the view that it is the use of the term itself that is laden with consequence when submitting an invoice for food and beverage service.

subsequent 2004 amendment of the statute, we have no need to parse that later version of the statute. "Where the ordinary meaning of the statutory terms yields a workable result, we need not resort to extrinsic aids of interpretation such as legislative history." *Pyle* v. *School Comm. of S. Hadley,* 423 Mass. at 286. Even were we to do so, however, it would avail Northeastern little since we see nothing in the preceding or subsequent versions of the statute that would recommend Northeastern's suggested construction of the applicable version of § 152A.

*The claim against Chartwells.* The plaintiffs argue that the judge erred in allowing Chartwells's motion for summary judgment, stressing that they were Chartwells employees and that liability under G. L. c. 149, § 152A, has much to do with the employment relationship. The plaintiffs call our attention in this regard to the contract between Chartwells and Northeastern, which requires Chartwells to comply with all governmental laws, rules, statutes, and regulations.[8] The plaintiffs analogize G. L. c. 149, § 152A, to G. L. c. 151B, which provides that employers can be held liable to employees for sexual harassment of which they were or should have been aware, even though the acts were committed by a third party who was neither an agent of the employer nor under its control. See *Modern Continental/Obayashi* v. *Massachusetts Commn. Against Discrimination,* 445 Mass. 96, 107-108 (2005), and cases cited. Consistent with legislative intent to protect servers, the plaintiffs claim, it is Chartwells's responsibility as the employer to ensure that § 152A is not violated.

We do not read the statute so broadly.[9] While the Legislature clearly intended to protect the servers, the burden of doing so

[8]We do not read Chartwells's contract with Northeastern as imposing any duty on Chartwells to ensure Northeastern's compliance with governmental regulations and statutes; the contract requires only that the "Contractor" (i.e., Chartwells) be in such compliance.

[9]Even if we were to accept the plaintiffs' invitation to look to G. L. c. 151B for guidance, we note that in *Modern Continental/Obayashi* v. *Massachusetts Commn. Against Discrimination, supra,* where the employer's response to harassing acts by third parties was deemed reasonable, the employer was not held liable. 445 Mass. at 117-118. It is undisputed that Chartwells paid its employees on a higher, "non-tipped" wage scale consistent with its understanding that any tips the employees did receive at Henderson House functions would be merely incidental.

falls upon the entity that "submits a bill or invoice indicating a service charge." G. L. c. 149, § 152A. The Legislature recognized that this entity is not always the direct employer; the statute therefore reads, "No employer *or* other person shall solicit . . . tips or gratuities . . . . If an employer *or* other person submits a bill or invoice indicating a service charge, the total proceeds . . . shall be remitted to the employees . . . ." (Emphasis added.) *Ibid.* The Legislature's use of "or" between "employer" and "other person" indicates that it contemplated that two separate entities could be liable — the employer and any other entity that submitted bills or invoices. Under a plain reading of § 152A, we do not see how Chartwells can be made to bear the burden of ensuring that Northeastern remits to the plaintiffs the service charge proceeds.[10]

*Conclusion.* The order dated January 7, 2004, is affirmed insofar as it allows Chartwells's motion for summary judgment. The remainder of the order is vacated. So much of the order dated December 20, 2004, as denies in part Northeastern's renewed motion for summary judgment on count I is affirmed.[11] The denial of the plaintiffs' renewed cross motion for summary judgment on count I is vacated and a new order shall enter allowing the plaintiffs' motion for the time period prior to Northeastern's substitution of the term "facilities charge" for "service charge" upon bills and related documents presented to Henderson House customers. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[10]Chartwells did allow a "tip jar" to be placed on the bar with the customers' consent. At times, a customer would give cash or a check directly to the servers, or would request that a gratuity be added to its credit card bill. In those cases, Chartwells distributed the money to the servers through its payroll system. Further, it is undisputed that Chartwells had no control over the service charge proceeds, which Northeastern deposited directly upon receipt into an operational account for Henderson House.

[11]The propriety of the order insofar as it allows Northeastern's renewed motion for summary judgment for the time period commencing in March, 2002, when the term "facilities charge" was substituted for "service charge," is not before us. See note 5, *supra.*