WALTER BEDNARK & others[1] *vs.* CATANIA HOSPITALITY
GROUP, INC.,[2] & another.[3]

No. 09-P-2048.

Barnstable. November 5, 2010. - February 25, 2011.

Present: LENK, VUONO, & RUBIN, JJ.

*Labor,* Wages. *Statute,* Construction. *Words,* "Administrative fee."

In a civil action arising from the defendants' assessment, made to function
event customers at the defendants' hotel, of an additional charge of eighteen
or nineteen percent of the amount invoiced for food and beverages —
which charge appeared on the invoices below the charge for food and
beverages and above the total charged, and was identified on the invoices,
function contracts, and function menus simply as an "administrative fee,"
without further written explanation or description — the judge erred in
granting summary judgment in favor of the defendants, where the defend-
ants did not establish as a matter of law that they had satisfied the "safe
harbor" requirements of the Massachusetts Wage Act, G. L. c. 149,
§ 152A(*d*), or that the designated "administrative fee" was not a service
charge within the meaning of § 152A(*a*). [809-817]

CIVIL ACTION commenced in the Superior Court Department on
April 17, 2008.

The case was heard by *Christopher J. Muse,* J., on a motion
for summary judgment.

*Hillary Schwab* (*Shannon Liss-Riordan* with her) for the
plaintiffs.

*John E. Coyne* for Catania Hospitality Group, Inc., & others.

LENK, J. We are once again called upon to interpret the provi-
sions of the Massachusetts Wage Act protecting wages and tips,

---

[1]Anthony D'Allessandro, Richard Lacy, and others similarly situated. No
class certification proceedings occurred prior to the summary judgment now
on review. Use of the term "plaintiffs" in this opinion refers to the three
individuals named.

[2]Doing business as Cape Codder Resort and Spa.

[3]William V. Catania. The Massachusetts Restaurant Association, as amicus
curiae, joined in the defendants' brief.

as most recently amended in 2004. See G. L. c. 149, § 152A, as appearing in St. 2004, c. 125, § 13 (Tips Act or Act). The matter is before us on the plaintiffs' appeal from a summary judgment dismissing all the claims in their (amended) class action complaint.[4]

The plaintiffs are bartenders who prepared and served alcoholic and other beverages for guests at special functions held at the defendants' hotel, the Cape Codder Resort and Spa, at various times between February 1, 2003, and November 27, 2006. The defendants (hotel) in that period assessed function event customers an additional charge of eighteen or nineteen percent of the amount invoiced for food and beverages. The charge appeared on the invoices below the charge for food and beverages and above the total charged. The hotel identified this charge on the invoices (and also on function contracts and function menus) simply as an "administrative fee," without providing further written explanation or description.

The plaintiffs contend that the "administrative fee" imposed by the hotel was in fact a "service charge" as defined in the 2004 version of the Tips Act,[5] because it was "a fee that a patron or other consumer would reasonably expect to be given to a wait staff employee, service employee, or service bartender." G. L. c. 149, § 152A(a).[6] If the "administrative fee" was such a service charge, then the hotel violated the statute by failing to distribute the proceeds to the plaintiffs. See G. L. c. 149, § 152A(d), first

---

[4] In addition to bringing a claim pursuant to G. L. c. 149, § 150, second par., for violation of G. L. c. 149, § 152A, the plaintiffs brought common-law claims for quantum meruit, intentional interference with contractual or advantageous relations, breach of contract, breach of the covenant of good faith and fair dealing, conversion, and unjust enrichment.

[5] There is no contention that the prior version of the Act governs the outcome of any part of the dispute. Our analysis proceeds accordingly.

[6] The statute fully defines "[s]ervice charge" as follows:

> "a fee charged by an employer to a patron in lieu of a tip to any wait staff employee, service employee, or service bartender, including any fee designated as a service charge, tip, gratuity, or a fee that a patron or other consumer would reasonably expect to be given to a wait staff employee, service employee, or service bartender in lieu of, or in addition to, a tip."

G. L. c. 149, § 152A(a).

par.[7] The hotel maintains that its written designation of the imposed fee as an "administrative fee," without more, brought it within the safe harbor provision contained in § 152A(*d*), and that the amounts collected are thus not tips or service charges payable to the plaintiffs.[8]

In reviewing whether summary judgment for the hotel was warranted, we determine whether, on the undisputed material facts of record, the hotel was entitled to judgment as matter of law. *Zang* v. *NRT New England Inc.*, 77 Mass. App. Ct. 665, 669-670 (2010). Given the procedural posture, the motion judge was not in a position to make factual findings to which we need defer, and his legal analysis, while of great interest to us, is not binding upon us. See *Clean Harbors, Inc.* v. *John Hancock Life Ins. Co.*, 64 Mass. App. Ct. 347, 357 n.9 (2005). Many of the material facts are undisputed, and for summary judgment purposes, we view the evidence as to any disputed facts in the light most favorable to the plaintiffs as the nonmoving parties.[9] *Gennari* v. *Reading Pub. Schs.*, 77 Mass. App. Ct. 762, 763 (2010).

---

[7]"If an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to the wait staff employees, service employees, or service bartenders in proportion to the service provided by those employees." G. L. c. 149, § 152A(*d*), first par.

[8]What we will refer to as the safe harbor provision is set out in § 152A(*d*), second par., as follows:

"Nothing in this section shall prohibit an employer from imposing on a patron any house or administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge for wait staff employees, service employees, or service bartenders."

We note that the Tips Act does not define the terms "administrative fee," "house fee," or "designation."

[9]In this regard, the hotel maintains that it verbally explained to function event customers that the "administrative fee" billed was not a gratuity. The plaintiffs proffered evidence, sufficient to raise a material factual issue, that some customers made statements tending to show they had not been so notified, and that some patrons became upset when the wait staff left out "tip jars" or otherwise implied that they would appreciate "additional" gratuities. The hotel contends on appeal that the statements in the affidavits proffered by the plaintiffs in this regard are beyond our consideration because they contain inadmissible hearsay. The argument is flawed because the hotel has failed to demonstrate that it objected to or moved to strike these statements in the

*Discussion.* The Supreme Judicial Court had occasion in *Di-Fiore* v. *American Airlines, Inc.*, 454 Mass. 486 (2009), to examine closely the current version of the Tips Act applicable to the dispute now before us. The 2004 amendment replaced in its entirety the predecessor act, last amended in 1983, and expanded both the scope and the protections afforded by the predecessor act. Both versions, however, share the same basic purpose — to protect the wages and tips of certain employees who fall within the ambit of the statute.[10] *Id.* at 492. "The Legislature's intent in enacting the Act can be plainly discerned from its language and history — to ensure that service employees receive the tips, gratuities, and service charges that *customers intend* them to receive" (emphasis supplied). *Id.* at 491.

The 2004 amendment, like the predecessor Act, essentially imposes strict civil liability upon the employer, which, irrespective of its intent, will suffer the consequences[11] if, as the result of its statutory noncompliance, protected employees do not

---

affidavits. See *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 324 n.2 (2001); *Parks* v. *Johnson*, 46 Mass. App. Ct. 905, 905-906 (1998); *McCrea* v. *Flaherty*, 71 Mass. App. Ct. 637, 644 n.9 (2008), citing *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985). We thus consider the affidavits in full, and we need not decide whether, as the plaintiffs suggest, the proffered out-of-court statements of the customers are admissible at least for the nonhearsay purpose of showing their state of mind. See generally Mass. G. Evid. § 801(c) & note at 246-247 (2010 ed.).

[10]These include wait staff employees, service employees, and service bartenders, all as defined in § 152A(*a*), and to whom we will sometimes refer as "protected employees." There is no dispute that the plaintiffs are protected employees.

[11]General Laws c. 149, § 152A(*f*), provides:

> "Whoever violates this section shall be subject to all of the civil and criminal penalties and remedies set forth in section 27C [of this chapter]. Any person or employer who violates this section shall make restitution for any tips accepted, distributed or retained in violation of this section, together with interest thereon at the rate of 12 per cent per annum. An employee claiming to be aggrieved by a violation of this section may proceed pursuant to the second paragraph of section 150 [of this chapter]. The attorney general or, under said section 150, an employee may bring an action under this section within 3 years of any violation of this section."

General Laws c. 149, § 150, second par., referenced in G. L. c. 149, § 152A(*f*), provides in pertinent part:

> "An employee claiming to be aggrieved by a violation of section[] . . .

receive the tips, gratuities, and service charges to which they are entitled. See *Somers* v. *Converged Access, Inc.*, 454 Mass. 582, 591-592 (2009); *Cooney* v. *Compass Group Foodservice*, 69 Mass. App. Ct. 632, 638-639 (2007).[12] In addition to defining key terms and setting forth what employers may and may not do with respect to tips and service charges, the Legislature enacted § 152A(*g*) of the Tips Act,[13] "demonstrat[ing] that the Legislature was cognizant, in general, of the risk that employers or other persons may seek to find ways . . . to attempt to avoid compliance with the Act, and intended to thwart such schemes." *DiFiore, supra* at 497.

The hotel maintains that it is in compliance with the Act, as the § 152A(*d*) safe harbor provision permits an employer to impose on a patron "any house or administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge for wait staff employees, service employees, or service bartenders." The hotel argues, and the motion judge agreed,

---

152A . . . may, 90 days after the filing of a complaint with the attorney general, or sooner if the attorney general assents in writing, and within 3 years after the violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees."

G. L. c. 149, § 150, as amended through St. 2008, c. 80, § 5.

[12]It seems to be undisputed that the hotel paid the plaintiffs a substantially higher hourly wage for bartending at hotel functions ($12.00 to $14.25 per hour) than for regular bartending at the hotel's restaurant and lounge (starting at $2.63 per hour, during which the plaintiffs received tips from customers). However, contrary to the hotel's apparent suggestion, the pay differential is immaterial to our analysis of the issue on appeal. See *Somers*, 454 Mass. at 591-592 ("Nor would we be persuaded by a restaurant employer's argument that, despite the provisions of G. L. c. 149, § 152A, it should not be required to pay its wait staff the fee charged customers as a designated service charge because, had it realized that it had this obligation, it would have paid the wait staff a lower hourly wage"), citing *Cooney*, 69 Mass. App. Ct. at 638-639.

[13]General Laws c. 149, § 152A(*g*), provides, "No employer or person shall by a special contract with an employee or by any other means exempt itself from this section."

that mere "designation" of the charge as an "administrative fee," without more, is enough to bring the charge within the § 152A(*d*) safe harbor provision because the statute should be read as permitting an employer *either* to provide a "designation" *or* to provide a "written description" of the fee that expressly informs the patron that the fee is not a tip or service charge for wait staff. On this view, by the very act of identifying the charge as an "administrative fee," the hotel was automatically exempted from any statutory requirement to pay to protected employees amounts thereby collected, regardless of whether patrons reasonably believed the charge to be in the nature of a gratuity for such employees.

The plaintiffs, in contrast, contend that to come within this statutory safe harbor (i.e., to impose upon patrons a fee that categorically cannot be considered a "service charge" or "tip" as defined in § 152A[*a*]), the employer must do more than just label a charge as an "administrative fee" or a "house fee." On this view, whether the employer provides the customer a "designation" of such a fee or a "written description" of the fee charged, it must in either event do so in a way that informs the patron that the fee so designated or described does not represent a tip or service charge for the protected employees. For the reasons that follow, we think the reading of the statute urged by the plaintiffs is the correct one.

As in *DiFiore*, "familiar principles of statutory construction guide our interpretation. We look to the intent of the Legislature 'ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). In addition, our respect for the Legislature's considered judgment dictates that we interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation. See *Commonwealth* v. *Dodge*, 428 Mass. 860, 865 (1999), quoting *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982) ('we must read the statute in a way

to give it a sensible meaning'). Where possible, we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction. *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 859 (2005)." *DiFiore*, 454 Mass. at 490-491.

We engage first with the text of the § 152A(*d*) safe harbor provision (see note 8, *supra*), attending in particular to the grammar and punctuation of the relevant language. The hotel chiefly relies for its proposed reading of the provision on the last antecedent rule, "the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 133 (1949), quoting from *Hopkins* v. *Hopkins*, 287 Mass. 542, 547 (1934). Citing to this rule, the hotel maintains that the phrase, "which informs the patron that the fee does not represent a tip or service charge," should modify only the last antecedent, "written description of that house or administrative fee," and should not modify the first antecedent, "designation."[14]

The rule, however, has little ready application here since its common and most powerful use occurs where a list of multiple, distinct antecedents precedes the modifying clause.[15] See *Druzik, supra* at 132-133; *Moulton* v. *Brookline Rent Control Bd.*, 385

[14]The hotel has not invoked the rule of lenity to argue that it should receive a beneficial interpretation because criminal penalties are available under the statute. That argument would fail in any event, because in our view, the provisions of the Act in question do not possess the requisite ambiguity. See *DiFiore*, 454 Mass. at 497 n.12 (assuming rule of lenity applies in civil action when statutory violation may trigger criminal penalties, rule was not applicable because definition of "service charge" was not ambiguous in context of entire Act).

[15]As with other canons of construction, the last antecedent rule is not always outcome determinative. See *Taylor* v. *Burke*, 69 Mass. App. Ct. 77, 82 (2007). Indeed, the rule itself states the exception since it will not apply when "there is something in the subject matter or dominant purpose which requires a different interpretation." *Druzik*, 324 Mass. at 133, quoting from *Hopkins*, 287 Mass. at 547. See *Selectmen of Topsfield* v. *State Racing Commn.*, 324 Mass. 309, 312-314 (1949) (refusing to apply last antecedent rule when doing so would conflict with dominant purpose of statute); *Bynes* v. *School Comm. of Boston*, 411 Mass. 264, 271 (1991) (same); *Taylor*, 69 Mass. App. Ct. at

Mass. 228, 230-232 (1982); *Herrick* v. *Essex Regional Retirement Bd.*, 77 Mass. App. Ct. 645, 646 n.2, 650 (2010). See generally 2A Singer & Singer, Statutes & Statutory Construction § 47:33 (7th ed. 2007), collecting cases. In this case, there is no such list of distinct antecedents preceding the modifying clause, but rather a single phrase ("a designation or written description of that house or administrative fee") consisting of two terms ("designation or written description") that are not separated by a comma. The absence of a comma suggests that the Legislature intended the words "of that house or administrative fee" to modify both "designation" and "written description."[16] See *Taylor* v. *Burke*, 69 Mass. App. Ct. 77, 81 (2007) (punctuation, though not determinative of legislative intent, may be considered as indication of purpose of legislation).[17]

A more pertinent grammatical rule is provided by Justice Brandeis, writing for the United States Supreme Court in *Porto Rico Ry., Light & Power Co.* v. *Mor*, 253 U.S. 345, 348 (1920): "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." In keeping with this rule, we read § 152A(*d*) as containing a single antecedent clause ("a designation or written description of that house or administrative fee") followed by a general modifying clause that applies to the entire antecedent clause ("which informs the patron that the fee does not represent a tip or service charge for wait staff employees, service employees, or service bartenders"). This reading neither

81-82 (same). Where the dominant purpose of the Tips Act is to "protect gratuity payments given to, or intended for, service employees," *DiFiore*, 454 Mass. at 496, application of the last antecedent rule here would not serve the Act's dominant purpose.

[16]The hotel's reading necessarily would leave the term "designation" entirely unmodified, an unlikely legislative drafting choice given that the term is not defined or described elsewhere in the statute.

[17]Moreover, the presence of a comma prior to the modifying clause (", which informs . . .") is some indication that the clause is meant to apply to more than just the immediate predecessor. See 2A Singer & Singer, Statutes & Statutory Construction § 47:33 (7th ed. 2007) ("Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma").

"add[s] words to the statute that the Legislature did not see fit to put there," *Cooney*, 69 Mass. App. Ct. at 638, nor renders superfluous any words that the Legislature did see fit to include, *Commonwealth* v. *Wellesley Toyota Co.*, 18 Mass. App. Ct. 733, 735 (1984).[18]

This reading is buttressed by examining it in the context of the statute as a whole and, especially, in connection with § 152A(*a*), which defines the term "service charge" (see note 6, *supra*). The definition includes two ways in which an employer-imposed fee to patrons may constitute a service charge that must be remitted to protected employees. First, "any fee designated as a service charge, tip, [or] gratuity" — regardless of the employer's, employee's, or patron's intent or expectation — is automatically rendered a "service charge" under the current Tips Act. G. L. c. 149, § 152A(*a*). See *Cooney*, 69 Mass. App. Ct. at 637 (interpreting prior version of Act as meaning that "any fee that the invoicing entity chooses to call a 'service charge' on an invoice for food or beverage service [is] the functional equivalent of a tip or gratuity, thereby subjecting the fee to the statute"). Second, "a fee that a patron or other consumer would reasonably expect to be given to a wait staff employee, service employee, or service bartender in lieu of, or in addition to, a tip" also constitutes a "service charge." Section 152A(*a*) notably does not exclude from this category of "service charge" a fee designated as an "administrative" or "house" fee under § 152A(*d*), leaving open the possibility that a patron, depending on the particular cir-

---

[18]The hotel's contention that the reading we adopt would render superfluous the words "designation or" is unpersuasive. The hotel argues, in essence, that the term "designation" would lack purpose and be subsumed in the term "written description" if an employer choosing the words "house fee" or "administrative fee" as its designation of a charge was otherwise required to inform the patron that the fee does not represent a tip or service charge. The Legislature gave employers the option of designating charges or of forgoing labels and instead providing a written description, such as "miscellaneous charges for overhead, facility upkeep and restocking." We fail to see how the designation option is made superfluous by requiring that employers who select the designation option, but choose words of designation that fail to inform patrons that the charge is not a gratuity, must provide a written description that does so inform. We also observe that the Act does not explicitly require a "designation" to be in writing to be effective, just that it be "provide[d]" and that it "inform[]" the patron in the statutory sense.

cumstances, would reasonably expect such a fee to be given to protected employees.[19]

In support of its reading of the language at issue, the hotel argues that just as any charge designated by an employer as a "service charge, tip, [or] gratuity" under § 152A(a) must be automatically remitted to protected employees, so too must any charge designated an "administrative fee" or "house fee" automatically fall under the safe harbor provision of § 152A(d). We discern no such equivalence in the effect of the terms, either as a practical matter or in the context of the statute.

The terms "tip" and "service charge" are defined in the statute and are generally well understood as being in the nature of a gratuity. "[A] customer reasonably would expect a fee 'designated as a service charge' to be given to service employees . . . ." DiFiore, 454 Mass. at 494. In contrast, the terms "house fee" and "administrative fee," notably undefined in the statute, are not self-explanatory and do not enjoy a uniform or commonly understood meaning. Depending on the context and absent further explanation, a "house fee" could as easily be understood to be one imposed for services provided by house staff as it could one imposed in connection with, say, facilities maintenance. Likewise, a fee labeled an "administrative fee," particularly one like that at issue here in the eighteen or nineteen percent range, could refer to a service fee collected by the employer for distribution to the service staff, as well as to such things as general overhead and restocking costs.

The employer's designation of a fee as a "house" or "administrative" fee, then, neither indicates whether all or any part of the fee is in the nature of a gratuity nor necessarily comports with customer expectations. Section 152A(d) of the Tips Act requires an employer to do something more than simply label a fee as "house" or "administrative," in order to dispel the possibility that a patron would reasonably believe that the fee is a gratuity.[20]

Interpreting § 152A(d) as we have done renders it consistent

---

[19]Here, in the light most favorable to the plaintiffs, the summary judgment record supports sending the case to the jury on the question of reasonable patron expectation.

[20]We note that the Attorney General, charged with administering the Tips

with and complementary to § 152A(*a*), and preserves the plain patron-centric focus of both § 152A(*a*) and § 152A(*d*) as to the nature of the employer-imposed fee. "Where two statutory provisions relate to the same subject matter, . . . 'they should be construed together so as to constitute an harmonious whole consistent with the legislative purpose.' " *Dowling* v. *Registrar of Motor Vehicles*, 425 Mass. 523, 525 (1997), quoting from *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981). The hotel's interpretation of § 152A(*d*), on the other hand, would lead to the untenable result that fees designated, without more, as "administrative" or "house" fees would never qualify as service charges under § 152A(*a*), despite the fact that patrons might, in some circumstances, reasonably believe them to be service charges. Such an interpretation, shielding potential abuses within the safe harbor of § 152A(*d*), would fly in the face of the "express purpose" of the Act: to "protect gratuity payments given to, or intended for, service employees." *DiFiore*, 454 Mass. at 496.

Accordingly, we conclude that summary judgment was incorrectly entered for the hotel, which did not establish as matter of law that it had satisfied the requirements of the § 152A(*d*) safe harbor or that the designated "administrative fee" it billed and collected within the relevant period was not a "service charge" within the meaning of § 152A(*a*). There are material issues of fact in dispute, including whether the hotel informed relevant patrons that the administrative fee was not in the nature of a tip or gratuity. We accordingly reverse the summary judgment

Act, issued an advisory concerning this aspect of § 152A(*d*). Conformably with our reading of the statutory language, the advisory states, "Employers may propose an additional fee, or a fee in place of a service charge. This fee may be identified as an administrative, house or other fee and may be retained or distributed by the employer at its discretion. It must be evident to customers that this fee is not a gratuity, tip or service charge." Advisory 2004/3, An Advisory from the Attorney General's Fair Labor and Business Practices Division on an Act Protecting the Wages and Tips of Certain Employees, at 3-4. Given its applicability to the matter before us, we "grant [the Attorney General's] interpretation substantial deference and will not disturb it where the interpretation is reasonable," as here. *DiFiore*, 454 Mass. at 496 n.11.

dismissing the plaintiffs' claims[21] and remand the matter for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

---

[21]The summary judgment dismissed all the plaintiffs' claims, including the common-law claims. Regarding the latter, the judge's decision and the hotel's arguments advance no rationale for dismissal other than that these claims derive from the Tips Act claim. Thus, whether or not the common-law claims are in fact derivative, given our decision on the Tips Act claim, we reverse the judgment as to the common-law claims as well.