Fabricant, Judith, J.
INTRODUCTION
This an action under the tips provision of the Massachusetts Wage Act, G.L.c. 149, §152A. Plaintiffs, employees of Dunkin’ Donuts franchises owned or operated by defendant Constantine Scrivanos, claim that their employer has violated the law by preventing them from accepting or keeping tips offered or left for them by customers.[1] Before the Court is the defendant-employer’s motion for judgment on the plead *314 ings. For the reasons that will be explained, the motion will be denied.
BACKGROUND
The first amended complaint, filed on June 24, 2011, alleges as follows. Plaintiffs and members of the class they seek to represent work as wait staff at Dunkin’ Donuts franchises owned and operated by the defendant through “numerous corporations.” “As is customary in the food and beverage industry,” customers at defendant’s shops “routinely leave, or attempt to leave," tips for service. Wait staff employees at defendant’s shops “have not been permitted to retain the tips that customers leave, or attempt to leave for them,” but instead “have been required to return tips to customers.” “If an employee cannot return a tip to the customer, then the employee is required to put the money in the cash register, to be retained by management.” Based on these alleged facts, the complaint asserts claims of violation of G.L.c. 149; §Í52A (count I); tortioiis interference with contractual and/or advantageous relations between plaintiffs and customers (count II); and unjust enrichment or quantum meruit (count III).
DISCUSSION
A motion for judgment on the pleadings challenges the legal sufficiency of the complaint, and accordingly, is subject to the same standard as amotion to dismiss. Welch v. Sudbury Youth Soccer Ass’n, Inc., 453 Mass. 352, 353 (2009). Taking all factual allegations of the complaint as true, but disregarding legal conclusions, see General Convention of New Jerusalem v. MacKenzie, 449 Mass. 832, 838 (2007), the-Court must determine whether the complaint sets forth allegations “plausibly suggesting (not merely consistent with) an entitlement to relief.” Iannachino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (internal quotations and citations omitted).
Defendant’s motion characterizes the plaintiffs’ claims as “all premised on the novel legal theory that it is illegal for employers in the Commonwealth to have a policy and practice of prohibiting tipping in their establishments.” The statute, he contends, does not prohibit such a policy. As to the common-law claims, defendant contends that the complaint fails to state a claim on which relief may be granted. The Court will address each count in turn.
1. The Tips Act
General Laws c. 149, §152A(b) provides in pertinent part:
No employer or other person shall demand, request or accept from any wait staff employee, service employee, or service bartender any payment or deduction from a tip or service charge given to such wait staff employee, service employee, or service bartender by a patron.
“The Legislature’s intent in enacting the Act can be plainly discerned from its language and histoiy — to ensure that service employees receive the tips, gratuities, and service charges that customers intend them to receive.” DiFiore v. American Airlines, Inc., 454 Mass. 486, 491 (2009); Bednark v. Catania Hospitality Group, Inc., 78 Mass.App.Ct. 806, 809 (2011).
As defendant points out, the statute does not by its terms bar an employer from adopting and enforcing a no-tipping policy. The statute expressly prohibits an employer from requiring or accepting payment from tips “received” by the employee, or any “payment or deduction” from tips “given to” the employee, but it does not say that the employer must permit employees to receive tips, or must permit customers to give tips to employees. Nor does any decision identified by the parties or the Court address the issue. Plaintiffs nevertheless argue that that requirement follows from the statutory purpose, as articulated in DiFiore, supra, “to ensure that service employees receive the tips, gratuities, and service charges that customers intend them to receive.” To effectuate this purpose, plaintiffs contend, the statute must be construed to require employers to permit employees to receive any tips customers may offer, and to permit customers to give them at will. Defendants counter that such a reading would lead to absurd results, in that it would require all employers, including public employers, to permit tipping, despite risks of conflicts of interest, favoritism, and the like.
The Court is not persuaded that the interpretation plaintiffs propose is essential to the statutory purpose recognized in DiFiori and Bednark, supra. In both of those cases, employers imposed service charges in circumstances such that customers might reasonably have expected the charges to go to employees, and on that basis might have refrained from giving other money as tips, even though permitted to do so. See DiFiori, 454 Mass, at 494; Bednark, 78 Mass.App.Ct. at 815-16. In that context, the courts interpreted the statute so as to effectuate customers’ reasonable expectations. It does not follow that the statute prohibits a no-tipping policy that is clearly and conspicuously announced, so as to preclude any such reasonable expectation.[2]
The Court is similarly unpersuaded, however, that a statutory bar on no-tipping policies would necessarily lead to the results defendant invokes. As to public employees, G.L.c. 268A provides a clear, specific, and unequivocal prohibition on acceptance of gratuities. Any conflict that might exist between that statute and c. 149 would surely be resolved in favor of the former as the more specific, particularly in light of the strong policy interest in public integrity. See Pereira v. New England LNG Co., Inc., 364 Mass. 109, 118 (1973) (“If a general statute and a specific statute cannot be reconciled, the general statute must yield to the specific statute”). As to private sector employees, the statute provides its own limitation in its definition of “service employee” as “a person who works in an occupation in which employees customarily receive *315 tips or gratuities.” G.L.c. 149, §152A(a). Application of that part of the definition might require factual determination in some cases, but courts are fully capable of making such determinations.
Nevertheless, the Court recognizes that, with respect to some employees who might meet the applicable statutory definitions, employers might choose to prohibit tipping for legitimate reasons that are consistent with public policy. In the context of private schools, camps, health care facilities, and residences for the elderly or disabled, for example, employers might reasonably determine that tipping would create an undue risk of favoritism, or would place unfair pressure on students, parents, clients, or patients. In certain types of service businesses, such as all-inclusive resorts, spas, or the like, employers might reasonably determine that tipping is inconsistent with the iype of atmosphere desired. And in the context of a coffee shop such as this defendant’s business, an employer might reasonably seek to avoid the administrative burden of accounting for tips and allocating them among those employees entitled to receive them.[3]
These legitimate employer concerns would not override a statutory prohibition. As discussed supra, however, the statute expresses no prohibition against no-tipping policies, and such policies do not necessarily contravene its purposes. In the face of legislative silence, the Court sees no basis to conclude that a no-tipping policy, if announced with sufficient effectiveness to prevent any misapprehension among customers, is unlawful.
It does not follow, however, that defendant is entitled to judgment as a matter of law on the plaintiffs’ claim of statutory violation. The complaint, as summarized supra, does not allege that the defendant’s no-tipping policy is clearly and effectively announced to defendant’s customers, such that they could not reasonably believe that money left as tips would benefit employees. To the contrary, the complaint alleges that customers at defendant’s shops “routinely leave, or attempt to leave," tips for service. That allegation supports an inference that at least a substantial number of defendant’s customers do expect that money they leave will go to employees.
Moreover, the complaint further alleges that “(i]f an employee cannot return a tip to the customer, then the employee is required to put the money in the cash register, to be retained by management.” Drawing reasonable inferences in the plaintiffs’ favor, as is appropriate at this stage, the Court understands this allegation to mean that customers leave change on the counter intended as tips, and then leave the shop too quickly for employees to return the money, and that the employer then keeps the money. If money left in that manner is “received by” or “given to” employees as tips, the employer’s acceptance of it would constitute a violation of the express statutory prohibition against an employer demanding, requesting, or accepting from wait staff “any payment or deduction from a tip . . . given to such wait staff employee ... by a patron.” G.L.c. 149, §152A(b).
Defendant argues that an employer who prohibits tipping must be allowed to follow this practice, because no other approach could effectively enforce a no-tipping policy. The Court recognizes the challenge of effective enforcement, but that problem does not create an exception to the statute. If an employer chooses to prohibit tipping, it must take responsibility for communicating that policy to its customers effectively. If it does, so that customers could not reasonably expect money left on the counter to be treated as tips, the conclusion may follow that such money is not “received by” or “given to” employees as tips. But the Court cannot make that determination at this stage, on the allegations of the complaint. The Court concludes that the facts pled state a cognizable claim of statutory violation.[4]
2. Tortious Interference
To state a claim of tortious interference with advantageous relations, a plaintiff must prove that it had or reasonably expected to have an advantageous business relationship with a third party; that the defendant knew of the relationship; that the defendant interfered with it, inducing the third party to terminate the relationship; and that the defendant did so by improper means or for an improper motive. See Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990).
Here, as summarized supra, plaintiffs allege that defendant “interfered with the relationship between customers and wait staff by not allowing customers to tip the wait staff,” and by “diverting to themselves money that customers intended to leave as tips for the employees.” Defendant argues that these allegations are insufficient in two respects: plaintiffs have failed to allege any expectation of financial benefit from their relationships with customers, and have failed to allege that defendant acted for an improper motive or by improper means.
As to expectation of financial benefit, the complaint alleges that tipping “is customary in the food and beverage industry,” and that customers at defendant’s shops “routinely leave, or attempt to leave,” tips for service. That is enough to indicate that, if not for defendant’s policy, plaintiffs would likely receive tips from customers. As to improper motive or means, as discussed supra, plaintiffs have alleged that defendant enforced its no-tipping policy by conduct that violated the statute — that is, by taking from plaintiffs tips received or given to them by customers. A statutoiy violation is an improper means for purposes of a claim for tortious interference. See generally, United Truck Leasing Corp. v. Geltman, 406 Mass. at 816-17 (discussing requirement of conduct that is “wrongful by *316 some measure beyond the fact of interference itself’). The Court therefore concludes that count II states a claim.[5]
3. Unjust Enrichment
Unjust enrichment is the “retention of money or property of another against the fundamental principles of justice or equity and good conscience.” Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005). To state a claim for unjust enrichment, a plaintiff must allege facts indicating “unjust enrichment of one party and unjust detriment to another party.” Salamon v. Terra, 394 Mass. 857, 859 (1985). Here, plaintiffs allege that defendant has beenurijustly enriched, at' their expense, by retaining money that customers intended to leave as tips' for employees. Defendant' argues, as it did with respect to'the statutory claim, that its retention of money left as tips is not'inequitá-ble, because it is the only feasible means of enforcing defendant’s lawful no tipping policy. For the reasons' already discussed, the Court is not persuaded. On the facts alleged, defendant’s retention- of money left as tips is a direct violation of the statute. To allow defendant to benefit from that violation would be unjust and inequitable. The Court therefore concludes that the complaint states a claim as to each count.[6] .
CONCLUSION AND ORDER
For the reasons stated, Defendant’s Motion for Judgment on the Pleadings is DENIED.

In addition to Constantine Scrivanos, the complaint as filed named “The Scrivanos Group d/b/a Dunkin Donuts.” In an order issued September 9, 2011, the Court dismissed ‘The . Scrivanos Group" on the ground that the complaint “does not provide allegations to indicate that it is a legal entity capable of being sued.”

As will be discussed further infra, whether such a clearly and conspicuously announced policy exists at defendant’s shops remains to be seen.

In this regard, the Court does not view an employer’s interest in avoiding litigation, or the risk of liability, as illegitimate. The volume of litigation in this Court under this statute, and the variety of theories presented, suggest that compliance is not a simple task. The prospect of trials over the question of whether certain occupations fall within the statutory definition of “service employee” only adds to the risks and expense facing employers. On the other side of the scale, employers who choose to prohibit tipping might be expected to incur increased wage costs to compete for labor with employers who allow tipping, at least at times when the labor market is healthier than it is now.

The Court is not persuaded that defendant violates the Act by requiring employees to return tips to customers, or to attempt to do so, as plaintiffs suggest. The statute prohibits employers from taking or accepting tips received by or given to employees. It does not prohibit employers irom requiring employees to refuse to accept tips, or to prevent customers from giving them.

As the Court suggested at argument, it is unclear what count II adds to the complaint. If plaintiffs prevail on the statutory claim, they will recover everything they could on this common-law claim, and more. If not, unless they identify some other basis improper motive or means, they will fall short on that element.

Like count II, count III depends on the statutory violation alleged in count I, and offers no additional relief, raising the question of how it might enhance plaintiffs’ position. Counsel’s answer to that question at argument was that, if the claim is characterized as contract-rather than tort-based, it might extend the statute of limitations. The Court has doubts. See Goldstein v. Savings Bank Life Ins. Co. of Mass., 435 Mass. 760, 761 n.2 (2002) (referring to “tort claims for unjust enrichment”); Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co., 448 F.Sup.2d 244, 263 (D.Mass., 2006) (applying tort statute of limitations to claims for unjust enrichment); but see Williamson v. DT Management, Inc., 17 Mass. L. Rptr. 606 (Mass.Super. March 10, 2004) (treating unjust enrichment claim as quasi-contract); see generally Hendrickson v. Sears, 365 Mass. 83, 85 (1974) (court looks to the “gist of the action or the essential nature of plaintiffs claim” to determine which limitations period applies).