NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11618


   RON MESHNA & others[1] <u>vs</u>.  CONSTANTINE SCRIVANOS & another.[2]



      Suffolk.     December 1, 2014. - April 10, 2015.

   Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
                     & Hines, JJ.



             <u>Tips</u>.  <u>Employment</u>.  <u>Notice</u>.



     <u>Civil action</u> commenced in the Superior Court Department on
May 18, 2011.

     The case was heard by <u>Thomas P. Billings</u>, J., on a motion
for summary judgment, and questions of law were reported by him
to the Appeals Court.

     The Supreme Judicial Court granted an application for
direct appellate review.


     <u>Shannon Liss-Riordan</u> for the plaintiffs.
     <u>Diane M. Saunders</u> (<u>Andrew E. Silvia</u> with her) for the
defendants.

_____

     [1] Ileana Ortiz, Ralph Sherrick, and Karen White.  The
plaintiffs sued on behalf of themselves and all others similarly
situated.

     [2] NGP Management, LLC.

The following submitted briefs for amici curiae:

Harris Freeman & Audrey R. Richardson for Labor Relations and Research Center, University of Massachusetts, Amherst, & another.

Christopher J. Anasoulis for DD Independent Franchise Owners, Inc.

Ben Robbins & Martin J. Newhouse for New England Legal Foundation.

Richard L. Alfred, Ariel D. Cudkowicz, C.J. Eaton, & Jessica S. Lieberman for Seyfarth Shaw LLP.

DUFFLY, J.  The plaintiffs are current and former employees at Dunkin' Donuts stores who brought suit in the Superior Court against Constantine Scrivanos, a Dunkin' Donuts franchisee of stores that employed the plaintiffs, and NGP Management, LLC (NGP), which performs management functions for those stores. Among other claims, the plaintiffs maintained that the defendants had implemented a no-tipping policy at certain of their Dunkin' Donuts stores,[3] and that the implementation of that policy, as well as the method of enforcing it, violated G. L. c. 149, § 152A (Tips Act).[4]  The Tips Act provides that no employer "shall . . . accept . . . any . . . deduction from a tip" given to any wait staff, service, or bartender employee, or

---

[3] Constantine Scrivanos holds franchises for approximately sixty-six Dunkin' Donuts stores in Massachusetts; approximately forty-four of these stores had a no-tipping policy in place during the period relevant to the plaintiffs' claims.

[4] The plaintiffs also asserted claims of tortious interference with contractual or advantageous relations and unjust enrichment.  The claim for unjust enrichment was dismissed, and is not before us.

"retain . . . any tip" given to the employer directly.  G. L.
c. 149, § 152A (b).

Concluding that the no-tipping policy was not a violation
of the Tips Act, a Superior Court judge allowed the defendants'
motion for summary judgment on that claim.  The judge denied the
motion on the claims alleging that the defendants' policy of
placing money left as tips in the cash register, and a later
policy of placing money left as tips in "abandoned change" cups,
violated the Tips Act, because he determined that these claims
raised triable issues of fact.  At the plaintiffs' request, the
judge then reported two questions to the Appeals Court, pursuant
to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996),
and we allowed the plaintiffs' petition for direct appellate
review.[5]

The judge reported the following questions:

> "1.  Does G. L. c. 149, § 152A allow an employer to
>      maintain a no-tipping policy?

> "2.  If a no-tipping policy is permitted under
>      Massachusetts law, may an employer be liable
>      under G. L. c. 149, § 152A if:

>> "a.  The employer fails to communicate the
>>      no-tipping policy clearly to customers, who
>>      consequently leave tips that are retained by the

---

[5] We acknowledge the amicus briefs submitted by DD
Independent Franchise Owners, Inc.; the Labor Relations and
Research Center, University of Massachusetts, Amherst, and the
Massachusetts Fair Wage Campaign; the New England Legal
Foundation; and Seyfarth Shaw LLP.

employer; and/or

"b. The employer clearly communicates the no-tipping policy to customers, who nonetheless leave tips that are retained by the employer?"

We answer the first question, "Yes." We answer question 2(a), "Yes," and 2(b), "No."

Background. We summarize the facts set forth in the judge's memorandum of decision, supplemented by the parties' joint statement of material facts, reserving some facts for later discussion. Scrivanos is a franchisee operating approximately sixty-six Dunkin' Donuts stores in the Commonwealth. He has established various limited liability companies and S corporations that own the stores for which he is a franchisee, and he is the manager of each of these corporations. Scrivanos also established NGP, which manages and operates all of Scrivanos's Dunkin' Donuts locations in Massachusetts. The plaintiffs are current and former employees of Scrivanos's Dunkin' Donuts stores. They were paid on an hourly basis. All of the plaintiffs earned at least the minimum wage under the Wage Act, G. L. c. 151, § 1.

Sometime in 2003, the defendants instituted a no-tipping policy at all of their stores, but later withdrew the policy as to some stores. When the plaintiffs' complaint was filed, the policy remained in effect in approximately two-thirds of

Scrivanos's Massachusetts stores, including all of the stores in which the plaintiffs worked. Under the no-tipping policy, an employee is not permitted to accept a tip from a customer, even if the customer wants to leave a tip, and is required to inform a customer who attempts to leave a tip of the policy.

The defendants have instituted various mechanisms for enforcing the no-tipping policy, including the placement of signs in the stores stating "no tipping" or "thank you for not tipping." The size and location of the signs vary from store to store. Additionally, the defendants instruct employees to inform customers of the no-tipping policy and to refuse to accept tips. The defendants have communicated to employees that the acceptance of tips "will result in disciplinary action, up to and including termination." Before commencement of this litigation, the defendants instructed employees to place "tips" that had been left by customers, notwithstanding the instructions about the no-tipping policy, in the cash register. After the filing of the plaintiffs' complaint in the Superior Court, an "abandoned change" policy was adopted. Employees in stores with a no-tipping policy were instructed to place the money in abandoned change cups located near the cash register. Employees also were instructed to inform customers that the "abandoned change" cups were not for tips, and that any money

placed in the cups would be used to discount future customers' purchases, similar to a "take-a-penny, leave-a-penny" container.

The plaintiffs asserted in their original complaint that both the defendants' no-tipping policy, and the policy of placing money left as "tips" in the cash register, violate the Tips Act. After the implementation of the "abandoned change" policy, the plaintiffs filed an amended complaint asserting that this new policy also violates the Tips Act.

The defendants filed a motion for judgment on the pleadings. After a hearing on the motion, a Superior Court judge held that the Tips Act did not prohibit implementation of a no-tipping policy, but that, if customers nonetheless left tips, those tips belonged to the employees, and an employer's retention of them would constitute a violation of the Tips Act. Concluding that a full record would be helpful for any appeal, the judge denied the plaintiffs' motion to report the case to the Appeals Court. Discovery was conducted, and the defendants thereafter filed a motion for summary judgment. A different Superior Court judge denied the motion in part, allowed it in part, and reported the questions to the Appeals Court. We allowed the plaintiffs' petition for direct appellate review.

Discussion. The reported questions require that we construe the language of the Tips Act, and we apply familiar

principles of statutory construction to guide our interpretation. "We look to the intent of the Legislature 'ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" DiFiore v. American Airlines, Inc., 454 Mass. 486, 490 (2009), quoting Industrial Fin. Corp. v. State Tax Comm'n, 367 Mass. 360, 364 (1975). "In addition, our respect for the Legislature's considered judgment dictates that we interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation." Bednark v. Catania Hospitality Group, Inc., 78 Mass. App. Ct. 806, 811 (2011), citing Commonwealth v. Dodge, 428 Mass. 860, 865 (1999).

We note, as an initial matter, that it is undisputed that the plaintiffs are employees entitled to the protections of the Tips Act. The Tips Act "protect[s] the wages and tips of certain employees who fall within the ambit of the statute." Bednark v. Catania Hospitality Group, Inc., 78 Mass. App. Ct. at 809. These employees include service employees, service bartenders, and wait staff employees. G. L. c. 149, § 152A (a).

Wait staff employees include counter staff who "serve[] beverages or prepared food directly to patrons," "work[] in a restaurant . . . or other place where prepared food or beverages are served," and have "no managerial responsibility." Id. The parties agree that the plaintiffs are "wait staff employees" within the meaning of the Tips Act.

1. Whether G. L. c. 149, § 152A, permits an employer to maintain a no-tipping policy. General Laws c. 149, § 152A (b), provides that

> "[n]o employer or other person shall demand, request or accept from any wait staff employee, service employee, or service bartender any payment or deduction from a tip or service charge given to such wait staff employee, service employee, or service bartender by a patron. No such employer or other person shall retain or distribute in a manner inconsistent with this section any tip or service charge given directly to the employer or person."

Relying on language in this provision, the plaintiffs contend that the plain language of the Tips Act prohibits an employer from instituting a no-tipping policy. They argue that G. L. c. 149, § 152A (b), does not permit an employer to take any "deduction from a tip," and that the defendants' prohibition on employees accepting tips in effect results in a "deduction from a tip" that the employee would have received absent the no-tipping policy.

The plaintiffs' interpretation is contrary to several tenets of statutory construction. It would require that we

disregard the plain meaning of the words "retain" and "deduction" as used in G. L. c. 149, § 152A (b).  Moreover, because the statute explicitly concerns tips that have been "given," either directly to employees or to employers, the plaintiffs' interpretation distorts the syntax of that section, in order to read into it a provision the Legislature did not include.

In the first sentence of G. L. c. 149, § 152A (b), an employer is prohibited from demanding, requesting, or accepting a "deduction" from a tip "given to [a covered] employee."  In construing a statute, where a word is commonly understood, it can "be given its ordinary meaning."  Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375 (2000), quoting Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 352 Mass. 517, 518 (1967).  According to several dictionary definitions, the word "deduct" means "to take away, as from a sum or amount."  See Webster's New Universal Unabridged Dictionary 520 (2003); 3 Oxford English Dictionary 115 (1978).  A "deduction" is commonly defined as "something that is or may be deducted."  Webster's New Universal Unabridged Dictionary, supra.  See Black's Law Dictionary 501 (10th ed. 2014) ("The act or process of subtracting or taking away"); 3 Oxford English Dictionary, supra at 116 ("That which is deducted

or subtracted").

Thus, in the plain and unambiguous language of the statute, an employer may not take away any amount from a "service charge, tip[, or] gratuity," G. L. c. 149, § 152A (a), that was "given to" a wait staff employee.  A tip that was "given to" an employee would include a tip that was handed directly to the employee or left on a counter for the employee, or a sum designated as a tip or gratuity on a customer's credit card slip.[6]  This reading of the first sentence of § 152A (b) is "consonant with sound reason and common sense."  Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).  See DiGiacomo v. Metropolitan Prop. & Cas. Ins. Co., 66 Mass. App. Ct. 343, 346 (2006).

The Tips Act also contemplates that tips intended for employees may be given directly to an employer.  An employer may "submit[] a bill, invoice or charge to a patron or other person that imposes a service charge or tip," G. L. c. 149, § 152A (d), for instance by submitting an invoice in connection with a private function at which the employer provides food and

_____

[6] Under G. L. c. 149, § 152A (a), a "[t]ip" is defined as

"a sum of money, including any amount designated by a credit card patron, a gift or a gratuity, given as an acknowledgment of any service performed by a [covered employee]."

beverages.[7]  See Cooney v. Compass Group Foodservice, 69 Mass. App. Ct., 632, 635 (2007).  The second sentence of G. L. c. 149, § 152A (b), addresses an employer's obligation in such a situation.  The sentence states that "[n]o . . . employer or other person shall retain" a tip or service charge "given directly to the employer."  The common definition of the word "retain" is "to keep possession of."  Webster's New Universal Unabridged Dictionary, supra at 1643.  Accordingly, the second sentence of G. L. c. 149, § 152A (b), addresses the circumstance in which tipping is permitted and a tip is actually given, albeit not directly to the employee; if payment of a tip or service charge is made to an employer, "the statute requires that the proceeds be remitted to the [covered] employees."  Cooney v. Compass Group Foodservice, supra at 637.  The Tips Act is explicit in this regard, and prohibits an employer from retaining a service charge or tip that was paid to the employer

---

[7] Under G. L. c. 149, § 152A (a), a "[s]ervice charge" is defined as

> "a fee charged by an employer to a patron in lieu of a tip to any [covered employee], including any fee designated as a service charge, tip, gratuity, or a fee that a patron or other consumer would reasonably expect to be given to a [covered employee] in lieu of, or in addition to, a tip."

rather than to the wait staff employee.[8]

No language in G. L. c. 149, § 152A (b), or elsewhere in the Tips Act, see G. L. c. 149, § 152A (a)-(g), prohibits an employer from imposing a no-tipping policy.[9]  The Tips Act addresses circumstances in which tipping is permitted and wait staff employees have been given tips, directly or indirectly; it prescribes what the employer is required to do with such tips. Id.

In support of their argument that a no-tipping policy is prohibited under the Tips Act, the plaintiffs point to the fact that the Legislature considered, but did not adopt, legislation

---

[8] An employer also may impose a fee that is not a tip or service charge, invoice a customer directly for such a fee, and retain that amount.

> "Nothing in this section shall prohibit an employer from imposing on a patron any house or administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge for wait staff employees, service employees, or service bartenders."

G. L. c. 149, § 152A (d).

[9] As noted, all of the plaintiffs were paid at least the statutory minimum wage; we are not called upon here to consider circumstances governed by G. L. c. 151, § 7, pursuant to which an employer may pay a "tipped employee" an hourly wage which is lower than the statutory minimum wage, provided that specific conditions have been met, and that the employer pays an "additional amount" if the hourly wage combined with the employee's tips falls below the minimum wage established in G. L. c. 151, § 1.

proposed in 2010 House Doc. No. 4814, which stated that "[n]othing in [the Tips Act] shall prohibit any employer from establishing a policy prohibiting tipping."  We have consistently rejected similar arguments, recognizing that "[t]he practicalities of the legislative process furnish many reasons for the lack of success of a measure other than legislative dislike for the principle involved in the legislation."  Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 457 n.18 (2007), quoting Franklin v. Albert, 381 Mass. 611, 615-616 (1980).  See United States v. Craft, 535 U.S. 274, 287 (2002), quoting Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 187 (1994) ("several equally tenable inferences may be drawn from such inaction").

Finally, the plaintiffs find support for their view in DiFiore v. American Airlines, Inc., 454 Mass. 486, 496 (2009), where we stated that the "express purpose of the [Tips] Act [is] to protect gratuity payments given to, or intended for, [covered] employees."  The plaintiffs suggest that this language indicates that G. L. c. 149, § 152A, protects not only tips actually given, but also tips that customers intended covered employees to have, and would have given to those employees had they not been prevented from doing so by imposition of a no-tipping policy.

We are not persuaded. In that case, we addressed a question certified to us by the United States District Court for the District of Massachusetts concerning the definition of the term "service charge" in G. L. c. 149, § 152A (d). We determined that the Legislature intended by this provision "to ensure that service employees receive all the proceeds from [assessed] service charges," DiFiore v. American Airlines, Inc., supra at 493, and interpreted the term "service charge" to include a tip or gratuity as "nonexclusive examples of fees that constitute service charges." Id. at 495. Nothing in that decision supports the view that the Tips Act applies to tips that customers intended to give to employees but, because of a no-tipping policy, did not give.

In sum, we do not construe G. L. c. 149, § 152A, to require that employers of wait staff employees must permit customers to give tips to such employees.

2. Liability under G. L. c. 149, § 152A, where a no-tipping policy is in effect. We turn to consideration of the second reported question, which relies upon a determination that imposition of a no-tipping policy is not contrary to the Tips Act. The second reported question asks that we consider the circumstances in which an employer seeking to enforce a no-tipping policy may be held in violation of the Tips Act if,

notwithstanding the implementation of such a policy, "customers . . . leave tips that are retained by the employer." For reasons we discuss, we conclude that, if an employer has not clearly communicated its no-tipping policy to customers, tips left by customers where service is provided by wait staff belong to those employees, and may not be retained by the employer. On the other hand, where the employer has clearly communicated to customers that a no-tipping policy is in effect, money left by customers in establishments where service is provided by wait staff is not a tip that was given to wait staff employees, regardless of a customer's intent.

a. Tips retained by employer who has failed to communicate its no-tipping policy clearly to customers. As discussed, the Tips Act defines particular circumstances in which a fee that is assessed by an employer is not a tip or service charge subject to the provisions of the Tips Act. G. L. c. 149, § 152 (d). See note 8, supra. In those circumstances, an employer must "inform[] the patron that the fee does not represent a tip or service charge for [covered employees]." G. L. c. 149, § 152 (d). This requirement reflects the Legislature's concern that, absent such information, customers charged a fee by employers of wait staff employees will assume that the employer will remit that amount to its wait staff employees.

Similarly, unless an employer who has implemented a no-tipping policy clearly conveys to customers that money they leave when paying their bill does not represent a tip for wait staff employees, it is readily conceivable that customers will have the reasonable expectation that the money they leave will be given to the wait staff employees. The absence of a clear communication to customers of a no-tipping policy could permit employers to pocket sums not intended for them, and would facilitate "an 'end run' around the [Tips] Act." DiFiore v. American Airlines, Inc., 454 Mass. at 496.

General Laws c. 149, § 152A (b), prohibits employers of wait staff employees from "demand[ing], request[ing] or accept[ing]" a payment or deduction from a tip "given to" such employees. Although an employer may adopt a no-tipping policy, it "may not escape [this] prohibition in . . . the [Tips] Act," DiFiore v. American Airlines, Inc., supra at 494, by failing to communicate to customers that the policy is in effect, and that the money they leave will not be kept by the employee as a tip. In the absence of such a communication of the no-tipping policy to customers, we conclude that "a sum of money . . . , given as an acknowledgment of any service performed by a [covered] employee," remains a "tip . . . that a patron . . . would reasonably expect to be given to a [covered] employee." G. L.

c. 149, § 152A (a).  An employer who, in those circumstances, "demand[s], request[s] or accept[s]" any portion of such sums does so in contravention of the Tips Act.  See G. L. c. 149, § 152A (b).

b.  Tips retained by employer who has clearly communicated no-tipping policy to customers.  Where an employer who employs wait staff employees has clearly communicated a no-tipping policy that effectively conveys that money left by a customer will not be received by any wait staff employee as a tip, we conclude that any money that is nonetheless left by a customer is not a tip "given to" the wait staff employees because a customer cannot reasonably expect that this money has been given to the employees.  Accordingly, where there has been a clear communication of a no-tipping policy to customers, the employer has not violated G. L. c. 149, § 152A (b), if the sums of money that nonetheless have been left by customers are retained by the employer, or placed in an "abandoned change" cup for use by other customers.[10]

Conclusion.  For the reasons stated, we answer the first

_____

[10] A clear communication of the no-tipping policy could be accomplished through the posting of signs such as those conveying that employees may not accept tips.  In addition, employers could instruct wait staff employees to convey to customers orally the existence of a no-tipping policy, and could provide training regarding the content of the communication, as well as when during the various points of interaction with a customer the information should be conveyed.

reported question, "Yes."  We answer question 2(a), "Yes," and we answer question 2(b), "No."  The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.