BERG vs. CIAMPA, 100 Mass. App. Ct. 569

 
 DEBORAH BERG & another [Note 1] vs. ELAINE CIAMPA & another. [Note 2]

100 Mass. App. Ct. 569
 November 16, 2021 - December 29, 2021

Court Below: Superior Court, Suffolk County
Present: Blake, Massing, & Ditkoff, JJ.

 

Uniform Enforcement of Foreign Judgments Act. Judgment, Enforcement. Practice, Civil, Judgment, Action to reach and apply, Summary judgment, Motion to dismiss. Boston Municipal Court. Jurisdiction, Superior Court, To reach and apply assets. Statute, Construction.

The Uniform Enforcement of Foreign Judgments Act, G. L. c. 218, § 4A, did not preclude a judgment creditor from domesticating a foreign judgment in Boston Municipal Court and seeking enforcement of the foreign judgment in the Superior Court. [570-573]

CIVIL ACTION commenced in the Superior Court Department on March 5, 2019. 

 Motions to dismiss and for summary judgment were heard by Douglas H. Wilkins, J. 

Robert J. O'Regan for Elaine Ciampa.

Joseph Perl for the plaintiffs.

 BLAKE, J. The question presented by this case is whether the Massachusetts Uniform Enforcement of Foreign Judgments Act, G. L. c. 218, § 4A (act), precludes a judgment creditor from domesticating a foreign judgment in the Boston Municipal Court (BMC) and seeking enforcement of the foreign judgment in the Superior Court. For the reasons that follow, we conclude that it does not. 

 Background. The plaintiffs, Deborah Berg and Karen Bedenbaugh (residents of Connecticut and North Carolina respectively), secured a money judgment against Ciampa (a resident of Massachusetts) in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida (Florida judgment) in January 2019. [Note 3] In 

 Page 570 

March 2019, the plaintiffs filed a complaint in the Superior Court against Ciampa, and six financial institutions as trustee defendants. [Note 4] Although styled as a trustee process claim, the plaintiffs sought to reach and apply Ciampa's funds held by the trustee defendant financial institutions. In May 2019, approximately one month after the effective date of the act, the plaintiffs domesticated the Florida judgment in the Central Division of the BMC pursuant to the act. See G. L. c. 218, § 4A (c). The BMC issued a writ of execution on behalf of each plaintiff in July 2019. In October 2019, the plaintiffs filed a motion for summary judgment in the Superior Court. Then in December 2019, Ciampa filed in the Superior Court a motion to dismiss, contending that the Superior Court lacked subject matter jurisdiction and that the case was moot. [Note 5] In a thoughtful decision, a judge of the Superior Court allowed the motion for summary judgment and denied the motion to dismiss, and judgment entered accordingly. This appeal followed. We affirm. 

 Discussion. To create uniformity and consistent with the full faith and credit clause set forth in art. IV, § 1, of the United States Constitution, the Uniform Enforcement of Foreign Judgments Act has been adopted by most States. Massachusetts, one of the last States to do so, adopted its version of the act with an effective date of April 1, 2019. See St. 2018, c. 358, § 1. The act provides that a judgment creditor may file a certified copy of a foreign judgment in the District Court [Note 6] where the creditor lives or has a place of business. See G. L. c. 218, § 4A (c). The judgment creditor must also file an affidavit setting forth the name and last known address of the judgment debtor. See G. L. c. 218, § 4A (d). Thereafter, the clerk of court sends notice to the judgment debtor, and after thirty days, a writ of execution may issue. Id. 

 Prior to the act's adoption, a judgment creditor was required to file a complaint against a Massachusetts judgment debtor to enforce and collect on an unsatisfied foreign judgment. See G. L. c. 235, § 23A. In order to provide a speedy and economical

 Page 571 

 method to enforce foreign judgments, the act was adopted "to make uniform the law of those states which enact it." G. L. c. 218, § 4A (h). The act also provides that "a judgment creditor shall retain the right to bring an action to enforce a judgment instead of proceeding under [the act]." G. L. c. 218, § 4A (g). Here, relying on the term "instead of," Ciampa contends that the act is more than procedural. She contends that the act requires judgment creditors to choose between commencing an action in the BMC and filing a complaint in the Superior Court. While we acknowledge that the term "instead of" could be read to mean as an alternative or substitute, here there is no suggestion that the plaintiffs tried to enforce the judgment against the trustee defendant in the BMC filing. And, as the motion judge observed, the BMC filing alone does nothing to enforce the command for payment. 

 When construing a statute, we look at the language as a whole, and "strive to 'give effect to each word.'" Commonwealth v. Vigiani, 488 Mass. 34, 36 (2021), quoting Ropes & Gray LLP v. Jalbert, 454 Mass. 407, 412 (2009). "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Rahim v. District Attorney for the Suffolk Dist., 486 Mass. 544, 547 (2020), quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001). Because the language the Legislature chose controls our interpretation of statutes, "[w]e derive the words' usual and accepted meaning from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." Commonwealth v. Montarvo, 486 Mass. 535, 536 (2020), quoting Commonwealth v. Garvey, 477 Mass. 59, 61-62 (2017). "[O]ur respect for the Legislature's considered judgment dictates that we interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation." Hovagimian v. Concert Blue Hill, LLC, 488 Mass. 237, 241 (2021), quoting Meshna v. Scrivanos, 471 Mass. 169, 173 (2015). 

 Ciampa's argument that the act cannot be read to provide for simultaneous attempts to enforce the judgment has some force. And we agree with her that the act should not be used to harass debtors, but that is not what happened here. The plaintiffs did not seek writs of execution from both the BMC and the Superior Court. At oral argument, the plaintiffs confirmed that they did not 

 Page 572 

intend to do so. And nothing herein should be construed to permit duplicate writs of execution. However, in arguing that the plaintiffs cannot proceed in both courts in the manner in which they have, Ciampa parses the words of the statute too finely. Indeed, if the Legislature intended to limit the remedies available to judgment creditors, it could have explicitly done so. However, it did not. 

 Our view of the act is consistent with the way that other States have interpreted their versions of the act. See, e.g., Patrick v. Hess, 212 So. 3d 1039, 1042 (Fla. 2017) (procedure to domesticate foreign judgment under Florida act is intended to provide efficient method to enforce foreign judgment without undue cost and difficulty); DocRx, Inc. v. EMI Servs. of N.C., LLC, 367 N.C. 371, 378, cert. denied, 574 U.S. 1012 (2014) (primary purpose of North Carolina act is procedural). And importantly, the act itself does not preclude other available remedies for a judgment creditor, provided that the creditor does not seek duplicative relief. See Matson v. Matson, 310 N.W.2d 502, 504-506 (Minn. 1981). See also Minn. Stat. § 548.31. For all of these reasons, the plaintiffs are not precluded from domesticating the Florida judgment in the BMC and seeking to recover the judgment in the Superior Court. 

 We also observe that the need for the plaintiffs to file the Superior Court action in addition to domesticating the Florida judgment in the BMC is further illustrated by the fact that the six financial institutions originally named as trustee defendants in the complaint filed in the Superior Court were not parties to the Florida judgment. The writs of execution issued by the BMC do not entitle the plaintiffs to reach property held by Fidelity Investments, now the sole remaining trustee defendant. [Note 7] See Massachusetts Elec. Co. v. Athol One, Inc., 391 Mass. 685, 688 (1984) ("the holder of [the] property" to be attached "must be joined as a party defendant in an action to reach and apply, given [their] interest in the issue of [its] indebtedness to the principal defendant and in the disposition of the property in [its] possession"). 

 Finally, we are not persuaded by Ciampa's argument that this is not a true reach and apply action, and therefore the plaintiffs could have sought to enforce the judgment against Ciampa's funds held by the trustee defendant in the BMC. Here, even if the cause of action is more in the nature of a trustee process than a reach and 

 Page 573 

apply action, [Note 8] the plaintiffs were required to sue the trustee defendant in order to collect Ciampa's funds it held. [Note 9] See G. L. c. 246, § 1; Mass. R. Civ. P. 4.2 (c), 365 Mass. 740 (1974). Because the trustee defendant was not a party to the Florida judgment, and the act provides no relief against nonparties to the foreign judgment, the plaintiffs cannot be limited to relief from the BMC in the action under the act. [Note 10]

 Even if the plaintiffs had an adequate remedy in the BMC, something we do not decide, the amount in controversy would exceed the procedural amount for money damages in the BMC. See G. L. c. 218, § 19; Standing Order of the Supreme Judicial Court, dated July 17, 2019, effective January 1, 2020 (increasing amount in controversy limit from $25,000 to $50,000). The Florida judgment, in excess of $200,000 per plaintiff, far exceeds the procedural amount applicable to this case in the BMC. This alone would likely have resulted in the plaintiffs' inability to recover exclusively in the BMC. 

 Conclusion. The plain language of the act does not deprive the Superior Court of jurisdiction where the judgment creditor domesticated the Florida judgment in the BMC. As the motion judge stated, at most the act's language may bar simultaneous proceedings to enforce the same judgment against the same parties. The judgment entered for the plaintiffs is affirmed.

 So ordered. 

FOOTNOTES
[Note 1] Karen Bedenbaugh. 

[Note 2] Fidelity Investments. 

[Note 3] The facts are undisputed as to the validity of and the amounts of the Florida judgment. 

[Note 4] The claims against Bank of America, Morgan Stanley, Citizens Bank, Wells Fargo, NA, and JP Morgan Chase Bank, NA were ultimately dismissed without prejudice, leaving Fidelity Investments as the sole remaining trustee defendant. 

[Note 5] We note that Ciampa sought to dismiss the Superior Court action, the first suit filed, and not the BMC action. At the time the Superior Court case was filed, the act had not gone into effect. 

[Note 6] The term "District Court" includes the Boston Municipal Court Department. G. L. c. 218, § 4A (b). 

[Note 7] See note 4, supra. 

[Note 8] We note that reach and apply actions are available only in the Superior Court or the Supreme Judicial Court, pursuant to G. L. c. 214, § 3 (6)-(9). 

[Note 9] For the same reasons, Ciampa's res judicata argument also fails. See Kobrin v. Board of Registration in Med., 444 Mass. 837, 843 (2005) (application of res judicata requires identity or privity of parties to present and prior actions, and identity of cause of action). 

[Note 10] The act does not allow for an amendment to a foreign judgment to add financial institutions as new parties to that judgment. See G. L. c. 218, § 4A. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.