NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-937

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 3271

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (board) as a level three sex offender in accordance with G. L. c. 6, § 178K (2) (c).  On appeal, Doe maintains that the hearing examiner erroneously applied the board's statutory and regulatory factors, improperly disregarded uncontroverted expert testimony and studies on sex offender recidivism, and that Internet dissemination of Doe's sex offender registry information would not serve a public interest. We affirm.

Background.  We summarize the facts as set forth in the hearing examiner's decision, "supplemented by undisputed facts

from the record."  Doe, Sex Offender Registry Bd. No. 10800 v.

Sex Offender Registry Bd., 459 Mass. 603, 606 (2011) (Doe No.

10800).

In 1986, Doe pleaded guilty to two counts of indecent

assault and battery on a child, G. L. c. 265, § 13B.  He was

sentenced to concurrent terms of one year in the house of

correction, suspended for three years with probation.  In 2003,

the board classified Doe as a level two sex offender in

accordance with G. L. c. 6, § 178K (2) (b).[1]

In 2012, State police discovered approximately 1,000 images

of child pornography on Doe's computer.  Doe admitted that he

knowingly possessed and disseminated the images, reasoning that

"he used the Internet as a substitute for contact offending."

Doe pleaded guilty to two counts of possession of child

pornography in violation of G. L. c. 272, § 29C, and was

sentenced to concurrent three-year terms of probation.  As a

condition of his probation, Doe was prohibited from being near

children under the age of eighteen and was permitted to use only

one computer in his house.  The board notified Doe of his duty

to register as a level three sex offender.

---

[1] "Where the board determines that the risk of reoffense is
moderate and the degree of dangerousness posed to the public is
such that a public safety interest is served by public
availability of registration information, it shall give a level
[two] designation to the sex offender."  G. L. c. 6,
§ 178K (2) (b).

2

In 2013, while Doe was still on probation, police discovered approximately 10,000 images of child pornography on multiple thumb drives in Doe's house.[2] The images featured young boys, most of whom were under the age of ten, engaging in sexual conduct with adult men. Doe pleaded guilty to one count of possession of child pornography, second offense, in violation of G. L. c. 272, § 29C, and was sentenced to two years in State prison. Also in 2013, Doe was found lying on his couch and watching a movie with a fourteen year old boy. The boy told the police that he had been with Doe three times over the past few weeks, but he denied any inappropriate behavior by Doe. Doe was found in violation of the terms of his probation for being in the company of an underage male.

In 2018,[3] the board reclassified Doe as a level three sex offender. Doe appealed and a Superior Court judge remanded the case to the board. After the remand, in 2020, a hearing

___

[2] Doe was fifty-nine years old at the time.

[3] Prior to 2018, a series of hearings and reclassifications of Doe's status occurred. In 2014, Doe was reclassified as a level three sex offender and Doe appealed. While that appeal was pending, the Supreme Judicial Court issued Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 309 (2015), which changed the quantum of proof from requiring a preponderance of the evidence to clear and convincing evidence of a sex offender's risk level. The board also discovered a procedural error in the reclassification process. Accordingly, Doe was returned to level two sex offender status and his 2014 hearing was dismissed.

examiner concluded that Doe's "risk to re-offend is high," "the degree of dangerousness [Doe] poses is high," and "a public safety interest is served by active dissemination and Internet publication of [Doe's] sex offender registry information." Accordingly, the hearing examiner ordered that Doe register as a level three sex offender in accordance with G. L. c. 6, § 178K (2) (c).[4]  A Superior Court judge affirmed the hearing examiner's determination; this appeal followed.

Discussion.  1.  Standard of review.  A level three classification is warranted where the hearing examiner "make[s] explicit" findings, supported by clear and convincing evidence that the offender presents "a high risk of reoffense, a high degree of dangerousness, and a public safety interest is served by active dissemination of the offender's registry information."[5] Doe, Sex Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 768 (2022).  "A reviewing court may set aside or modify [the board's] classification decision where it determines that the decision is in excess of [the board's] statutory authority or jurisdiction, violates constitutional

_____

[4] Her findings and decision are addressed as necessary below.

[5] "[A] hearing examiner may consider subsidiary facts that have been proved by a preponderance of the evidence" (citation omitted).  Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 754 (2021).

4

provisions, is based on an error of law, or is not supported by substantial evidence."  Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Board, 482 Mass. 643, 649 (2019) (Doe No. 496501), citing G. L. c. 30A, § 14 (7).  "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109 (2014) (Doe No. 68549), quoting G. L. c. 30A, § 14 (7).

"The court must 'give due weight to [the board's] experience, technical competence, and specialized knowledge . . . as well as to the discretionary authority conferred upon it.'"  Doe No. 68549, 470 Mass. at 109, quoting G. L. c. 30A, § 14 (7).  "[O]ur review does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion as [the board's examiner], but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotation and citation omitted).  Id. at 110.

In assessing the offender's dangerousness and likelihood to reoffend, the hearing examiner is "guided by [several] statutory risk factors" and various "aggravating and mitigating considerations."  Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 134 (2019) (Doe No. 23656).  See G. L. c. 6, § 178K (1) (a)-(l); 803 Code Mass. Regs. § 1.33 (2016).  A hearing examiner abuses the examiner's

5

discretion when making a "clear error of judgment in weighing the [relevant factors]" such that the outcome falls outside "the range of reasonable alternatives."  Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 292, 299 (2021), quoting L.L. v. Commonwealth, 471 Mass. 169, 185 n.27 (2014).  Ultimately, "[t]he final classification is not based on a cumulative analysis of the applicable factors, but rather a qualitative analysis of the individual sex offender's history and personal circumstances."  803 Code Mass. Regs. § 1.33.

2.  The factors.  Doe challenges the hearing examiner's application of the board's factors.  "A hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor."  Doe No. 68549, 470 Mass. at 109-110.  In evaluating Doe's risk of reoffense, the hearing examiner applied two high-risk factors:  "repetitive and compulsive behavior" (factor two) and "adult offender with child victim" (factor three); she awarded full weight to factor two.

Regarding factor two, "[t]he most weight shall be given to an offender who engages in sexual misconduct after having been charged with or convicted of a sex offense."  803 Code Mass. Regs. § 1.33(2)(a).  Doe engaged in sexual misconduct after being convicted of a sex offense.  Years after his 1986

6

convictions for indecent assault and battery on a child, Doe was convicted of possessing child pornography. While on probation, Doe was charged with (and later pleaded guilty to) to a second offense of possession of child pornography. Thus, we conclude that there was no error in the hearing examiner's application of factor two or three.

In addition to the high-risk factors, we discern no error in the hearing examiner's consideration of the risk-elevating[6] and risk-mitigating[7] factors. Doe challenges the hearing examiner's application of several factors.

First, Doe asserts that the hearing examiner erroneously awarded moderate weight to the "advanced age" mitigating factor. In sex offenders with child victims, an age of sixty or older has a significant mitigating effect as to risk of reoffense. Doe contends that at the age of sixty-six, the "advanced age" factor should have been given full weight. He introduced

---

[6] The hearing examiner applied the following risk-elevating factors: "relationship between offender and victim" (factor seven); "noncompliance with community supervision" (factor thirteen); "public place" (factor sixteen); "male offender against male victim" (factor seventeen); level of physical contact (factor 19); "diverse sexual behavior" (factor twenty); and "number of victims" (factor twenty-two).

[7] The hearing examiner also applied the following risk-mitigating factors: "advanced age" (factor thirty); "sex offender treatment" (factor thirty-two); "home situation and support system" (factor thirty-three); and "materials submitted by the sex offender regarding stability in the community" (factor thirty-four).

evidence that he suffered from medical ailments, including type two diabetes and high blood pressure, which he claims lower his risk of reoffense. The hearing examiner reasoned that Doe's most recent sex offense was committed when he was fifty-nine years old; therefore, the weight of this factor should be reduced because "he continued to reoffend at an advanced age." She also considered Doe's argument regarding his ailments, but the record before her was devoid of a description of Doe's "treatment and/or prognosis" and an explanation as to how these limitations impact Doe physically or sexually. We therefore defer to the hearing examiner's expertise on this factor. See Doe No. 68549, 470 Mass. at 109-110, quoting G. L. c. 30A, § 14 (7) ("a reviewing court is required to 'give due weight to [the examiner's] experience, technical competence, and specialized knowledge'").

Turning next to factor thirty-two, "sex offender treatment," Doe asserts that the hearing examiner erred by only awarding moderate mitigating weight to Doe's risk of reoffense. He contends that this factor should have been given full weight because he attended a counseling program from 2016 to 2018 and has not reoffended since 2013. The hearing examiner credited Doe's completion of sex offender-specific treatment and voluntary attendance at counseling; however, she reasoned that "[Doe] went on to reoffend and violate probation" and thus,

8

should only receive moderate weight as it relates to his risk of reoffense. The hearing examiner acted within her discretion in applying moderate weight to this mitigating factor. See Doe No. 68549, 470 Mass. at 109-110.

Doe also challenges the hearing examiner's consideration of his offense-free time.[8] Under factor twenty-nine, an offender's "offense free time in the community" is a mitigating factor if the offender has been offense-free for five years. Doe contends that he was offense-free for approximately twenty-seven years from his 1986 convictions to his 2012 charge for possession of child pornography.[9] For purposes factor twenty-nine, the offense-free time begins on the offender's most recent release from custody. The examiner therefore had no basis upon which to apply mitigating weight based on Doe's offense-free time before his 2016 release from custody. Nonetheless, under factor thirty-seven, "other useful information related to the nature of

_____

[8] The hearing examiner stated that she "do[es] not consider [Doe's] offense free time in [her] analysis of his current risk of re-offense." Later in her decision, she nonetheless stated that "[the expert] considers the four years thus far of [Doe's] offense free time to play a mitigating role in his risk of re-offense. I give [Doe] some credit for this . . . ."

[9] In considering Doe's history of sexual offenses, Doe contends that the "primary focus" should be on the "crime or crimes recently committed." Doe No. 496501, 482 Mass. at 651. Doe cannot have it both ways -- he cannot insist that the hearing examiner look to his recent criminal offenses in some instances, but ignore them in others.

9

sexual behavior," the hearing examiner awarded Doe "some credit" for his most recent stretch of offense-free time in the community, "but not the most weight." She reasoned that at the time of the 2020 hearing, Doe had -- at most -- been offense-free for four years following his release from incarceration in August 2016. The hearing examiner acted within her discretion in evaluating Doe's offense-free time, but concluded that he had not been offense-free for a full five years.

3. Expert testimony. Doe also argues that the hearing examiner improperly disregarded the expert's opinion and studies on sex offender recidivism. Doe's argument is undermined by the hearing examiner's sufficient explanation.

A hearing examiner may disregard "[t]he opinion of a witness testifying on behalf of a sex offender" even if "the board does not present any contrary expert testimony." Doe No. 10800, 459 Mass. at 637. In declining the expert's opinion, the hearing examiner must "explain[] on the record its reasons for rejecting portions of [an expert's] testimony" (quotation and citation omitted). Doe No. 23656, 483 Mass. at 136. See also Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 85 Mass. App. Ct. 1, 11 (2014) ("Doe is entitled to consideration, not acceptance, of the expert testimony").

At the 2020 hearing, Joseph Plaud, Ph.D., testified as an expert on the assessment of sexual offenders. He opined that

10

Doe's child pornography convictions, "although egregious, wrong, [and] illegal, represent[] actually a de-escalation, not an escalation" in his sexual conduct.  Thus, he reasoned that "that [Doe's] current risk to re-offend is 'at low to moderate.'"  Dr. Plaud also presented several studies on sex offender recidivism.[10]  In sum, Dr. Plaud recommended that Doe be classified as a level two sex offender because Doe "hasn't had a contact based sexual offense in . . . approximately [thirty-five] years" and he is currently sixty-six years old.  The hearing examiner agreed that there are different recidivism risks as to contact and non-contact sexual offenses.  However, she "part[ed] ways" with Dr. Plaud's analysis and concluded that Doe's risk of reoffense is high.

We discern no error in the hearing examiner's conclusion. She concluded by clear and convincing evidence that Doe's risk of reoffending and degree of dangerousness remained high because of his sexual offending behaviors, history of noncompliance with probation, including having contact with a fourteen-year-old boy alone on his couch, and his current circumstances. Specifically, the hearing examiner stressed:  "despite [Doe's]

_____

[10] We note that the studies predated the regulations in 803 Code Mass. Regs. § 1.33 and therefore, it was proper for the hearing examiner to not consider them in her analysis. Moreover, the recidivism data was appropriately considered in the updated regulations.

11

past convictions, [sex offender-specific treatment], advancing age, and committing non-contact versus contact sex offenses, . . . the evidence proves that [Doe] has continued to maintain a deviant sexual proclivity in pubescent boys over decades." We conclude that her reasoned decision was well within her discretion given the substantial evidence in the record.

4. Public interest. We are unpersuaded by Doe's argument that the hearing examiner abused her discretion in concluding that "a public safety interest is served by active dissemination and Internet publication of [Doe's] sex offender registry information." "Where a sexually violent offender presents a moderate risk to reoffend and a moderate degree of dangerousness, Internet publication will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area." Doe No. 496501, 482 Mass. at 655. This conclusion is even more compelling where, as here, the offender presents a high risk to reoffend and high risk of dangerousness.

We discern no error in the hearing examiner's conclusion. She concluded by clear and convincing evidence that dissemination of Doe's sex offender registry information is warranted. She noted that Doe's 2013 noncontact sexual offending and probation violation demonstrated his "highly inappropriate and predatory behavior" and "proclivity for

12

pubescent boys." Further, she determined that the evidence was "indictive of [Doe's] persistent sexually deviant interest in young boys that has endured decades."

After careful review of the hearing examiner's decision, we discern no abuse of discretion.

<u>Judgment affirmed</u>.

By the Court (Blake, Ditkoff & D'Angelo, JJ.[11]),

*Paul Little*

Clerk

Entered: November 13, 2024.

---

[11] The panelists are listed in order of seniority.